**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**DAMIAN M. BATEAST,**

**Plaintiff,**

**v.** **CASE NO. 22-3093-SAC**

**OLUWATOSIN S. ORUNSOLU, et al.,**

**Defendants.**

**MEMORANDUM AND ORDER**
**AND ORDER TO SHOW CAUSE**

Plaintiff brings this pro se action under 42 U.S.C. § 1983. Plaintiff is a prisoner at the El Dorado Correctional Facility ("EDCF") in El Dorado, Kansas. The Court granted Plaintiff leave to proceed *in forma pauperis*. (Doc. 4.) This matter is before the Court for screening Plaintiff's Complaint under 28 U.S.C. § 1915A. Also before the Court is a motion to appoint counsel (Doc. 3) filed by Plaintiff.

## I. Nature of the Matter before the Court

Plaintiff brings three counts in his Complaint (Doc. 1). All three are based on an incident that occurred on June 26, 2020. Plaintiff states that he was housed in Restrictive Housing at EDCF under protective custody (PC) for his safety. He was assigned a cellmate, Inmate Austin, who was in Restrictive Housing for disciplinary reasons and was well known for violence against his cellmates. Plaintiff was being taken to the showers and his hands had just been cuffed behind his back by Corrections Officer Brandon Gaines when Austin attacked him. Plaintiff alleges that Gaines held onto the chain between the cuffs for some period of time as Austin approached and

began to strike him. Austin hit him in the face and head multiple times with a contraband combination lock. Plaintiff suffered serious injuries, including a fractured eye socket that required surgery. Plaintiff was taken to the facility's medical clinic and examined by Nurse Rochelle Graham. She merely cleaned a wound on his elbow. Plaintiff was placed in an isolated suicide watch cell in the infirmary. The cell did not have an emergency call button. Plaintiff experienced dizziness, pain, and repeatedly vomited throughout the night. To get the attention of the nurse and officer working the infirmary, Plaintiff had to beat on the window. The nurse, whom Plaintiff refers to as Jane Doe, eventually gave Plaintiff two tablets of ibuprofen. The next day at about 3:00 p.m., Plaintiff was transported to the hospital by Corrections Officers Gannon and Freeman. There, x-rays revealed his facial injuries. The treating doctor at the hospital prescribed pain medication for Plaintiff. He was rushed out of the hospital by Gannon and Freeman, and he did not receive the prescribed medication at EDCF.

In Count I, Plaintiff alleges Defendants Orunsolu, Knapp, and Martin violated his rights under the Eighth Amendment by failing to provide him with proper protection from inmate assault while in protective custody. Plaintiff argues that he should not have been assigned Austin as a cellmate. He claims he had many other incidents with OSR inmates because of his PC status, which Orunsolu exposed to the other inmates in Restrictive Housing in an attempt to force Plaintiff to sign a "PC waiver."

In Count II, Plaintiff again alleges failure to protect under the Eighth Amendment, this time naming Defendants Flores, Latham, Gaines, and Perez. Gaines and Perez were the officers present for the assault. Flores and Latham had moved Plaintiff and Austin to a new cell the morning before the assault occurred. Austin wanted to bring his mattress from the old cell, and at first the officers refused. Austin then called Flores to the door of the cell and whispered something to her. She left

and returned with the mattress. This was the mattress where Austin was hiding the padlock he later used in the assault on Plaintiff. Plaintiff alleges Flores and Latham acted with malice.

In Count III, Plaintiff alleges that Defendants Graham, Gannon, Freeman, Harrod, Jane Doe, and John Doe were deliberately indifferent to his serious medical needs under the Eighth Amendment. He claims Graham failed to conduct an adequate examination of Plaintiff after the assault and claims that he did not receive the medication prescribed by the doctor at the hospital.

Plaintiff names as defendants the following EDCF personnel: Oluwatosin Orunsolu, CCI Unit Team; Adam Knapp, CCI Unit Team; Malty Martin, Unit Team Manager; Dana Flores, Corrections Officer; Asbury Lathan, Corrections Officer; Brandon Gaines, Corrections Officer; Orlando Perez, Corrections Officer; Rochelle Graham, Nurse; Gordon Harrod, Medical Provider; Eric Freeman, Corrections Officer; FNU Gannon, Corrections Officer; Jane Doe, Nurse; and John Doe, Corrections Officer. Plaintiff seeks unspecified compensatory damages, punitive damages, and injunctive relief.

**II. Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988)

(citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v.*

*Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

**III. Legal Standards**

**A. Failure to Protect under the Eighth Amendment**

While the Supreme Court has made clear that prison and jail officials have a duty to ensure the safety and protection of inmates (*see Farmer v. Brennan*, 511 U.S. 825, 833–34 (1994)), not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. A prison official may be held to have violated the Eighth Amendment only when two components are satisfied: an objective component requiring the inmate show he was "incarcerated under conditions posing a substantial risk of serious harm;" and a subjective component requiring that defendants acted with the culpable state of mind referred to as "deliberate indifference." *Id.*; *Wilson v. Seiter*, 501 U.S. 294, 299 (1991). Deliberate indifference exists when an official "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837; *Gonzales v. Martinez*, 403 F.3d 1179, 1186 (10th Cir. 2005), *cert. denied*, 546 U.S. 1003 (2005). A prison official's "failure

to alleviate a significant risk that he should have perceived but did not" does not amount to the infliction of cruel and unusual punishment. *Farmer*, 511 U.S. at 838. It follows that Plaintiff must allege facts indicating that Defendants actually knew of but disregarded a serious risk to him, rather than that they should have been aware of possible danger. *Id.* The mere fact that an assault occurred does not establish the requisite deliberate indifference to Plaintiff's constitutional rights. *Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir. 1993). Nor does an isolated attack by another inmate demonstrate a failure to protect.

**B. Deficient Medical Care under the Eighth Amendment**

The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishments. An inmate advancing a claim of cruel and unusual punishment based on inadequate provision of medical care must establish "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Boyett v. County of Washington*, 282 F. App'x 667, 672 (10th Cir. 2008) (citing *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005)). The "deliberate indifference" standard has two components: "an objective component requiring that the pain or deprivation be sufficiently serious; and a subjective component requiring that [prison] officials act with a sufficiently culpable state of mind." *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir. 1991); *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005). In the objective analysis, the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer*, 511 U.S. at 834. A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980); *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999); *Martinez*, 430 F.3d at 1304 (quoting *Farmer*, 511 U.S. at 834 (quotation omitted)).

"The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Martinez*, 430 F.3d at 1304 (citing *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quotation omitted)). In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1305 (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996) (quotation omitted)).

An inadvertent failure to provide adequate medical care or a negligent diagnosis "fail[s] to establish the requisite culpable state of mind." *Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); *Wilson*, 501 U.S. at 297. Likewise, a mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual punishment. *See Estelle*, 429 U.S. at 106–07; *Handy v. Price*, 996 F.2d 1064, 1067 (10th Cir. 1993) (affirming that a quarrel between a prison inmate and the doctor as to the appropriate treatment for hepatitis did not successfully raise an Eighth Amendment claim); *Ledoux v. Davies*, 961 F.2d 1536 (10th Cir. 1992) (Plaintiff's contention that he was denied treatment by a specialist is insufficient to establish a constitutional violation.); *El'Amin v. Pearce*, 750 F.2d 829, 833 (10th Cir. 1984) (A mere difference of opinion over the adequacy of medical treatment received cannot provide the basis for an Eighth Amendment claim.). Where the complaint alleges a "series of sick calls, examinations, diagnoses, and medication," it "cannot be said there was a 'deliberate indifference' to the prisoner's complaints." *Smart v. Villar*, 547 F.2d 112, 114 (10th Cir. 1976). As the United States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or

> to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medial mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.

*Estelle*, 429 U.S. at 105–106 (footnote omitted). The prisoner's right is to medical care - not to the type or scope of medical care he personally desires. A difference of opinion between a physician and a patient or even between two medical providers does not give rise to a constitutional right or sustain a claim under § 1983. *Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968).

Furthermore, delay in providing medical care does not violate the Eighth Amendment, unless there has been deliberate indifference resulting in substantial harm. *Olson v. Stotts*, 9 F.3d 1475 (10th Cir. 1993). In situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires a showing that the inmate suffered "substantial harm" as a result of the delay. *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001); *Kikumura v. Osagie*, 461 F.3d 1269, 1292 (10th Cir. 2006). In cases involving allegations of missed diagnoses or delayed treatment, plaintiffs may establish liability by showing:

> a medical professional recognizes an inability to treat the patient due to the seriousness of the condition and his corresponding lack of expertise but nevertheless declines or unnecessarily delays referral, e.g., a family doctor knows that the patient needs delicate hand surgery requiring a specialist but instead of issuing the referral performs the operation himself; (2) a medical professional fails to treat a medical condition so obvious that even a layman would recognize the condition, e.g., a gangrenous hand or a serious laceration; [or] (3) a medical professional completely denies care although presented with recognizable symptoms which potentially create a medical emergency, e.g., a patient complains of chest pains and the prison official, knowing that medical protocol requires referral or minimal diagnostic testing to confirm the symptoms, sends the inmate back to his cell.

*Boyett*, 282 F. App'x at 673 (quoting *Self*, 439 F.3d at 1232) (citations omitted)).

### C. Personal Participation

In addition to the objective and subjective components of these Eighth Amendment claims, a § 1983 plaintiff must show that each defendant personally participated in the alleged violation, and conclusory allegations are not sufficient to state a constitutional violation. *Gray v. Sorrels*, 744 F. App'x 563, 568 (10th Cir. 2018); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (an essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based).

## IV. Discussion

### A. Count I

Count I contains two claims. The first claim alleges failure to protect based on the assignment of Austin as Plaintiff's cellmate. Plaintiff states that he should never have been celled with Austin because Austin's status was OSR (other security risk) while Plaintiff was protective custody (PC) status. Plaintiff fails to state an actionable claim on this basis.

Under the objective component, Plaintiff must show that he was "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Plaintiff states Austin was "well known for his violence against his cellmates" generally, that Plaintiff had many incidents with *other* OSR cellmates, and that his PC status caused him to generally be in danger. These allegations do no more than demonstrate a possible danger to Plaintiff resulting from housing him with Austin rather than the substantial risk required to state an Eighth Amendment claim.

For the subjective component to be met, Plaintiff must show that Orunsolu, Knapp, and Martin knew that Austin posed an excessive risk to Plaintiff and disregarded that risk by housing them together. Plaintiff does not allege that he had a history of conflict with Austin, had previously

submitted grievances about Austin, or had told the defendants that he feared Austin would attack him. Plaintiff's allegations do not support a finding of deliberate indifference on the basis of being assigned Austin as a cellmate.

The second claim in Count I is that "Orunsolu exposed [Plaintiff's] status to the entire cellhouse in an attempt to get me to sign a P.C. waiver that made Plaintiff a target." Doc. 1, at 5. Plaintiff also fails to state a claim here. While courts have recognized Eighth Amendment claims based on guards labeling prisoners as "snitches," Plaintiff has not included sufficient factual support for such a claim. His allegation is conclusory and unclear.

In addition, Plaintiff mentions Defendant Martin in Count I, but his only allegation is that it was part of Martin's job duties to assign cellmates in Restrictive Housing. This is not the kind of direct personal participation required to hold an individual liable under section 1983. Plaintiff makes the same claim about Knapp but also mentions that Knapp had an argument with Austin about Austin's OSR status earlier on the day of the attack. The allegation does not move Plaintiff closer to establishing Knapp's personal participation in any alleged violation. Defendants Martin and Knapp are subject to dismissal.

**B. Count II**

Plaintiff's allegations in Count II about the actions of Flores are troubling but do not state a claim for deliberate indifference under the Eighth Amendment. Even if Flores knew that Austin was hiding something in his mattress, Plaintiff's factual assertions do not show that she knew what he was hiding, that he was planning to use the item to attack Plaintiff, or even that there was a serious risk he would do so. Plaintiff's claim against Flores is subject to dismissal

In addition, Plaintiff does not sufficiently allege the personal participation of Latham and Perez, making them subject to dismissal as well.

**C. Count III**

Plaintiff's allegations in Count III demonstrate that he was taken to the EDCF medical clinic after the attack and received some medical care. He claims that he received no care for his most serious injuries until the next day. These allegations describe a delay in receiving medical treatment. In situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires a showing that the inmate suffered "substantial harm" as a result of the delay. *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001); *Kikumura v. Osagie*, 461 F.3d 1269, 1292 (10th Cir. 2006). Plaintiff does not claim he suffered any additional harm as a result of the delay in terms of a worsening of his injuries. However, he does allege that he was in great pain. "When a prisoner alleges that a delay in treatment caused him pain, if 'the pain experienced during the delay is substantial, the prisoner sufficiently establishes the objective element of the deliberate indifference test.'" *Gray v. Sorrels*, 744 F. App'x 563, 568 (10th Cir. 2018) (quoting *Al-Turki v. Robinson*, 762 F.3d 1188, 1193 (10th Cir. 2014) (internal quotation marks omitted)). Plaintiff's allegations are sufficient to meet the objective prong at this screening stage.

As for the subjective prong, Plaintiff has some problems. He alleges Defendant Graham examined him, asking no questions but merely cleaning a wound on his elbow. His allegations may demonstrate that Graham was negligent but do not demonstrate that she knew of and disregarded an excessive risk to Plaintiff's health or safety. Plaintiff alleges Defendant Jane Doe initially told him there was nothing she could do for him overnight in the infirmary and eventually gave him two ibuprofen. These allegations do not establish deliberate indifference. Plaintiff claims Defendant John Doe was the officer working the infirmary overnight, and he joined Jane Doe in saying there was nothing they could do. Again, this does not rise to the level of being aware of and disregarding an excessive risk to Plaintiff's health or safety.

Plaintiff claims Defendants Gannon and Freeman "had to be stopped by the hospital's doctor from rushing [Plaintiff] out the door to leave." While perhaps ill-advised, there is no indication that their actions demonstrated a disregard for an excessive risk to Plaintiff's health.

Plaintiff further claims that he did not receive the pain medication prescribed by the hospital doctor. Prison officials "may . . . be liable under § 1983 for indifference manifested . . . [by] intentionally interfering with treatment once prescribed." *Estate of Booker v. Gomez*, 745 F.3d 405, 429 (10th Cir. 2014) (ellipses and internal quotation marks omitted). Plaintiff describes a conversation with Defendant Harrod and states that he was "unable to receive the pain medication" he was prescribed. He does not fully explain why he was unable to get the medicine or allege that any defendant intentionally prevented him from receiving it.

For these reasons, Count III of the Complaint is subject to dismissal.

**V. Motion to Appoint Counsel (Doc. 3)**

Plaintiff asks the Court to appoint an attorney to represent him because the issues are complex, he is indigent, and he is being held in segregation which limits his ability to investigate the facts of the case. incarcerated and cannot afford to hire one. He states that he has attempted to contact four attorneys.

Plaintiff's request for the appointment of counsel is denied at this time. There is no constitutional right to the appointment of counsel in a civil case. *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989); *Carper v. Deland*, 54 F.3d 613, 616 (10th Cir. 1995). The decision whether to appoint counsel in a civil matter lies within the discretion of the district court. *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991). "The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006), quoting *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111,

1115 (10th Cir. 2004). It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case." *Steffey*, 461 F.3d at 1223, quoting *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995). In deciding whether to appoint counsel, the district court should consider "the merits of the prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Rucks*, 57 F.3d at 979; *Hill*, 393 F.3d at 1115.

Considering these factors, the Court has not yet made the determination of whether or not Plaintiff's claims survive the initial screening required by 28 U.S.C. § 1915. Therefore, the Court denies Plaintiff's motion for appointment of counsel at this time. However, this denial is made without prejudice. If it becomes apparent that appointed counsel is necessary as this case further progresses, Plaintiff may renew his motion.

**VI. Response and/or Amended Complaint Required**

Plaintiff is required to show good cause why the claims and defendants discussed above should not be dismissed for the reasons stated herein. Plaintiff is also given the opportunity to file a complete and proper amended complaint upon court-approved forms that cures all the deficiencies discussed herein.[1] Plaintiff is given time to file a complete and proper amended complaint in which he (1) raises only properly joined claims and defendants; (2) alleges sufficient facts to state a claim for a federal constitutional violation and show a cause of action in federal

[1] To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint. *See* Fed. R. Civ. P. 15. An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it. Therefore, any claims or allegations not included in the amended complaint are no longer before the court. It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint. Plaintiff must write the number of this case (22-3093-SAC) at the top of the first page of his amended complaint and he must name every defendant in the caption of the amended complaint. *See* Fed. R. Civ. P. 10(a). Plaintiff should also refer to each defendant again in the body of the amended complaint, where he must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances. Plaintiff must allege sufficient additional facts to show a federal constitutional violation.

court; and (3) alleges sufficient facts to show personal participation by each named defendant.

If Plaintiff does not file an amended complaint within the prescribed time that cures all the deficiencies discussed herein, this matter will be decided based upon the current deficient Complaint and claims and/or defendants may be dismissed without further notice.

**IT IS THEREFORE ORDERED THAT** Plaintiff is granted until **July 11, 2022,** in which to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff is also granted until **July 11, 2022**, in which to file a complete and proper amended complaint to cure all the deficiencies discussed herein.

**IT IS FURTHER ORDERED** that Plaintiff's motion for appointment of counsel (Doc. 3) is **denied without prejudice** for the reasons stated herein.

The clerk is directed to send § 1983 forms and instructions to Plaintiff.

**IT IS SO ORDERED**.

**Dated June 10, 2022, in Topeka, Kansas.**

**s/_Sam A. Crow_____**
**SAM A. CROW**
**SENIOR U. S. DISTRICT JUDGE**