Damion M. Bateast #118348
**Name**

EDCF P.O. Box 311

El Dorado, Kansas 67042
**Address**

Judy Demond Tocul

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

Damion M. Bateast, Plaintiff
*(Full Name)*

v.

Oluwatosin S. Orunsolu, Adam D. Knapp, ~~Warden~~ CDCF, Jay Gannon, Matty Moatin, Xana L. Flores, JS Burch, Lathrum, Rochelle Gwartney, Brandon L Gaines, Orlando A Perez, Paul J. Freemon, Jane Doe, John Doe, John Doe, Defendant(s)

CASE NO. 22-3093-SAC
*(To be supplied by the Clerk)*

**AMENDED CIVIL RIGHTS COMPLAINT PURSUANT TO 42 U.S.C. §1983**

## A. JURISDICTION

1) Damion M. Bateast *(Plaintiff)*, is a citizen of Kansas *(State)* who presently resides at EDCF P.O. Box 311, El Dorado, Kansas 67042 *(Mailing address or place of confinement.)*

2) Defendant Oluwatosin S. Orunsolu *(Name of first defendant)* is a citizen of El Dorado, Kansas *(City, State)*, and is employed as CCI Unit team *(Position and title, if any)*. At the time the claim(s) alleged in this complaint arose, was this defendant acting under the color of state law? Yes ✓ No ☐. If your answer is "Yes", briefly explain:

Oluwatosin S. Orunsolu was performing as Unit team in cellhouse A-2 on 6-26-2020 at EDCF

1

XE-2 8/82                CIVIL RIGHTS COMPLAINT §1983

## DEFENDANTS

Defendant Matty J. Martin is a citizen of El Dorado Kansas and is employed as Unit team manager. At the time the claims alleged in the complaint arose was this defendant acting under color of state law? Yes
Matty J. Martin was performing as Unit team manager in cellhouse A at El Dorado Correctional Facility.

Defendant Dana L. Flores is a citizen of El Dorado Kansas and is employed as CO1 B corrections officer. At the time the claims alleged in this complaint arose was this defendant acting under color of state law? Yes
Dana L. Flores was performing as an corrections officer in cellhouse A-2 on 6-26-2020 at El Dorado Correctional Facility.

Defendant Ashley A. Lathrum is a citizen of El Dorado Kansas and is employed as CO1 B corrections officer. At the time the claims alleged in this complaint arose was this defendant acting under color of state law? Yes
Ashley A. Lathrum was performing as an corrections officer in cellhouse A-2 on 6-26-2020 at El Dorado Corrections Facility.

Defendant Brandon L. Gaines is a citizen of El Dorado Kansas and is employed as CO1 A corrections officer. At the time the claims alleged in this complaint arose was this defendant acting under color of state law? Yes
Brandon L. Gaines was performing as an corrections officer in cellhouse A-2 on 6-26-2020 at El Dorado Correction Facility.

Defendant Orlando A. Perez is a citizen of El Dorado Kansas and is employed as CO1 B corrections officer. At the time the claims alleged in this complaint arose was this defendant acting under color of state law? Yes
Orlando A. Perez was performing as an correction officer in cellhouse A-2 on 6-26-2020 at El Dorado Correctional Facility.

1.

→ Back

## DEFENDANTS

Defendant Rochelle Graham is a citizen of El Dorado Kansas and is employed as Nurse. At the time the claims alleged in this complaint arose was this Defendant acting under color of state law? Yes
Rochelle Graham was performing as a Nurse at El Dorado Correctional Facility Clinic on 6-26-2020.

Defendant COY Gannon is a citizen of El Dorado Kansas and is employed as CO1 B Corrections Officer. At the time the claims alleged in this complaint arose was this Defendant acting under color of state law? Yes
COY Gannon was performing as a Correctional Officer doing transport from El Dorado Correctional Facility on 6-27-2020

Defendant Eric J. Freeman is a citizen of El Dorado Kansas and is employed as CO1 B Corrections Officer. At the time the claim alleged in this complaint arose was this Defendant acting under color of state law? Yes
Eric J. Freeman was performing as a Corrections Officer doing transports from El Dorado Correctional Facility on 2-27-2020

Defendant Jane Doe is a citizen of El Dorado Kansas and is employed as Nurse. At the time the claims alleged in this complaint arose was this Defendant acting under color of state law? Yes
Jane Doe was performing as a Nurse in the Infirmary at El Dorado Correctional Facility on 6-26-2020.

Defendant John Doe is a citizen of El Dorado Kansas and is employed as Corrections Officer. At the time the claims in this complaint arose, was this Defendant acting under color of state law? Yes
John Doe was performing as a Corrections Officer in the Infirmary at El Dorado Correctional Facility on 6-26-2020

2.

## DEFENDANTS

Defendant John Doe is a citizen of ElDorado Kansas and is employed as medical provider. At the time the claims alleged in this complaint arose was this Defendant acting under color of state law? YES

John Doe was performing as a medical provider in the infirmary at ElDorado Correctional Facility on 6-27-2020

Defendant ElDorado Correctional facility is a citizen of ElDorado Kansas and is employed as EDCF. At the time the claims alleged in this complaint arose was this Defendant acting under color of state law? YES

ElDorado Correctional facility is where I was attacked by an inmate that was placed in the cell with me that EDCF and it's employee's considered a threat to prison population.

3.

3) Defendant __Adam D. Knapp__ is a citizen of
   _(Name of second defendant)_
   __El Dorado, Kansas__, and is employed as
   _(City, state)_
   __CCI Unit team__. At the time the
   _(Position and title, if any)_

claim (s) alleged in this complaint arose was this defendant acting under the color of state law? Yes ☑ No ☐. If your answer is "Yes", briefly explain:
__Adam D. Knapp was performing as Unit team in cellhouse A-2 on 6-26-2020 at EDCF__

(Use the back of this page to furnish the above information for additional defendants.)

4) Jurisdiction is invoked pursuant to 28 U.S.C. §1343(3); 42 U.S.C. §1983. (If you wish to assert jurisdiction under different or additional statutes, you may list them below.)

## B. NATURE OF THE CASE

1) Briefly state the background of your case:

__I was unprovokingly attacked by my cellmate an OSR inmate considered by officials to be a threat to prison population. I was under protective custody. Prison official failed to protect me. I suffered serious injuries, I wasn't given proper medical attention. I wasn't given pain meds prescribed by the doctor. Plantiff alleges that Prison officials violated his Eighth and Fourteenth admendments. Prison staff and Medical staff acted with malicous intent.__

2

XE-2 8/82                    CIVIL RIGHTS COMPLAINT §1983

# CAUSE OF ACTION

A(1) COUNT 1: Plaintiff claims defendants violated his eighth amendment right which prohibits cruel and unusual punishment. Defendants were deliberately indifferent to plaintiffs need for safety by failing to provide proper protection from inmate assault while in protective custody. Plaintiff claims defendants violated his fourteenth amendment right to be protected equally under the law.

A(2) SUPPORTING FACTS: EDCF's policy or lack there of allows inmates in protective custody, who are in protective custody to escape potential violence to be double celled in restrictive housing with punitive inmates, violent prison gang affiliates which defeats the purpose of protective custody and creates a hostile environment also creates potential violence for that inmate. If EDCF has a policy that doesn't allow the mixing of these inmates the EDCF and it's employees have violated that policy. It is EDCFs and it's employees responsibility to provide plaintiff with proper protection from inmate assault while in protective custody. EDCF and it's employees have failed to do so. Plaintiff has been unproducingly attacked and seriously injured multiple times by cellmates of different statuses while in protective custody, plaintiff still faces potential violence because his situation hasn't changed. Plaintiff has requested prison officials to be celled alone many times but has been told that there isn't enough room for every inmate to be self celled because of over crowding. I know of multiple inmates who occupy their own cell and are safe. Plaintiffs situation of being injured multiple times by cellmates should be an indicator to prison officials that he is not safe. Prison officials have put me in many dangerous situations. I am supposed to be safe instead I am being tortured and punished for being in protective custody. My placement in protective custody is the key factor that let officials know that I am at a risk of serious harm from other inmates but they have disregarded that also by double celling me with punitive inmates in restrictive housing because of their violent behaviors. I hold EDCF and it's employees responsible and liable.

## C. CAUSE OF ACTION

A)(3): Plaintiff claims Defendant disregarded a known risk to plaintiffs health and safety. Plaintiff claims Defendant espoused his P.C. status to the entire cellhouse that made plaintiff a target and caused irreparable harm.

A)(3) Supporting Facts: Defendants Okiwatosin S. Counsolu Adam D. Knapp and Mailey J. Martin worked as Unit team and Unit team manager in Cellhouse A-2 at El Dorado Correctional Facility. It was defendants job to assign inmates to their cells among other duties. Defendants assigned Inmate Austin #80351b an OSR (other security risk) inmate as plaintiffs cellmate. I was in protective custody for safety reasons. An OSR inmate is placed in segregation because they present an extended security threat due to violent and disruptive behaviors. They are considered to be a threat to prison population. Inmate Austin is a prominent gang affiliate, who is well known for his violent attitude and unprovokingly attacking his cellmates. Plaintiff and Austin should have never been celled together for these reasons alone. If prison officials considered inmates Austin behavior was so extreme and violent that they placed him in long term segregation because he was a threat to prison population then why would they place him in a small cell with an inmate who is on P.C. and in segregation to escape violence. This creates an hostile environment and shows neglect on their part. Plaintiff's placement into protective custody is the component that shows defendants  disregard that known risk by double celling plaintiff with an OSR inmate these themselves segregated because they considered him to be excessively violent and a threat to others. On 6-20-2020 Unit team Knapp made his daily rounds and engaged in a heated argument with inmate Austin. Austin was mad about not being able to get out of restrictive housing. It was said by Knapp that in order for that to happen an event has to happen.

## C. CAUSE OF ACTION

A)(3): In order for Austin to be moved, an event that had to happen I later found out was in reference to Austin attacking me. This comment by Knapp shows he knew what would transpire and even condoned it. This was not the first situation were Plantiff was facing harm because of Knapps neglect. Later that day while being handcuffed by officers from showers behind the back unable to defend hisself inmate Austin unprovokingly attacked Plantiff and struck him multiple times in the face and head with a lock that is considered contraband in restrictive housing. Plantiff suffered serious injuries and was transported to an off-site hospital the following day. After the incident not even 2 weeks later I watched as Austin walked out of A-cellhouse as if he didn't suffer any disciplinary consequences from attacking me. Plantiff alleges the attack was orchestrated by certain prison officials. Defendants showed no regard for Plantiffs safety.

A)(4): Plantiff claims defendant Crunsoll exposed his P.C. status to the entire cellhouse in an forced attempt to get Plantiff to sign a P.C. waiver that made him a target and caused irreparable harm to Plantiff.

A)(4): Supporting Facts: Plantiff stopped Crunsoll as he was passing his cell and asked to be moved to another cell. Crunsoll got hostile with me and stated "Why don't you just go to general population". I told him I wasn't safe in general population and under the circumstances I'm not safe now. He stated I was just being scart. I told him I was trying be safe and he should do his job and protect me. He stated okay and walked off. He returned with a P.C. waiver and stated here sign this P.C. waiver and go to population. He then slide the waiver through the door to me. I told him I'm not signing that and slide it back to him. He stated it doesn't matter if you sign it or not. He meant this with malicious intent. I told him he left

## C. CAUSE OF ACTION

A).(4): Everyone knows my business and he stated "who cares". He Grabbed the waiver and walked away from the door. I wasn't moved. This display exposed my status to the entire cellhouse which made me a target. I have had altercations with other cellies because of my status. No one wants to cell with a check-in because you are considered a snitch. In order to be placed in Protective Custody you have to inform prison officials of who or what and why you need protection. Inmates consider this snitching and label you. My status was confidential among inmates and should have stayed that way. Everyone I've celled with has had a problem with me because of this. I've suffered from anxiety and depression from all the conflict behind my status being exposed. Defendents action was malicious and caused irreparable harm to plantiff. Defendants promoted violence towards plantiff and put his life in danger.

## C. CAUSE OF ACTION

B)(1) COUNT II: Plantiff claims defendant were deliberately indifferent to his need for safety and violated his Eighth Amendment rights.

B)(2) Supporting Facts: Defendants Nancy J. Flores and Ausburry H. Latham were correction officers at El Dorado Correctional Facility in cellhouse A2 on 6-26-2020. Defendants carried out a cell move, the meaning of by moving plantiff and his cellmate from cell #211 to cell #123. We were allowed to take our property but not our mattresses. Inmate Austin #89356 ask C.O. Flores for his mattress and she replied they would provide us new mattresses in cell #123 which they did. Inmate Austin was adamant about receiving his previous mattress left in cell #211 but was denied by defendants. Austin called C.O. Flores to the door and had a conversation with her in a barely audible tone. She left and returned with the mattress. I later found out that his mattress concealed the lock that he used in the unprovoked attack against me. Plantiff claims officers actions were done with malice because there was no legitimate reason for them to provide Austin with a second mattress after denying his request unless they knew of his intentions. Plantiff claims that Austin's conversation with Flores revealed what was in the mattress and his intentions of attack against me. Flores had knowledge of what would transpire and assisted by her actions. In another incident concerning the same circumstances where plantiff was attacked by his cellmate C.O. Flores was the officer who gave the inmate his property that held razors and a lock that was used to injure plantiff. These items are considered contraband in seg-regation. I suffered a sliced ear that required stitches a swollen shut black eye and many knots. This makes the second incident were she was responsible for providing

## C. CAUSE OF ACTION

B)(2): My attacker with weapons, C.O. Flores made the comment to Plaintiff in regards to her participation in his attack by saying "No one will believe your story!" Her comment to me was a confession of her guilt and admittance of her participation. She was fully aware of what was to transpire and she intentionally assisted inmate Austin in his attack against me by providing him with that mattress concealing the weapon used. It's well known and established that officers are not to provide inmates with extra mattresses unless approved by medical or the warden which was not the case in this incident. This also is an indicated that Defendants mental state was not in a good place that they would even violate prison policy. Defendants actions were malicious. Plaintiff claims that C.O. Flores had motive to retaliate against him because of grievances he wrote addressing the fact she was passing him contaminated food trays.

B)(3): Defendants Brandon L. Gaines and Orlando A. Perez were working as Correction Officers at El Dorado Correctional Facility in cell house A-2. On the evening of 6-26-2020 both officers conducted showers. They approached the cell door and announced showers. As I was at the door getting handcuffed by C.O. Gaines I noticed inmate Austin going through his mattress. He and C.O. Gaines were giving each other signals with their head and eyes. When I felt Gaines lock the second cuff I begin to walk away from the door but he was holding the cuffs by the middle chain which prevented me from moving. When I turned my head to ask what the problem was I was struck in the face which dazed me. I was unable to see for a moment and unable to protect myself because I was handcuffed behind the back. I do believe the signals Austin and C.O. Gaines shared is an indicated that Gaines knew what was about to transpire and deliberately held me in place at

## C. Cause of Action

B)(3): the door which rendered me vulnerable and unable to move while Inmate Austin struck me with the weapon. I endured Austins beating until officers intervened which took an substantial amount of time. Officers sprayed us with mace and Austin ceased his attack. He walked to the door to be cuffed but stopped because he still had the lock in his hand which is considered contraband in segregation. He walked to his bunk and placed the lock in a hole in his mattress. He then went to the door and Gaines cuffed him. We were pulled out the cell and the entire cellhouse erupted into laughter and ridicule because of the injuries I suffered from. I was then escorted to the clinic between two officers. I was to dizzy to walk alone. The next day 6-27-2020 while in the infirmary C.O. Gaines paid me a visit. He looked at me with a smile and stated "You don't look so good." He then asked hows his brain functioning? I stated "all cylinders firing". When I spoke he looked disappointed and stated "well that's that it didn't work". He turned and left without another word. His comment indicated to me that his actions were intentional and deliberate. On a return visit from the specialist C.O. Perez held a conversation with me while being escorted to the cellhouse. He stated that it wasn't Austins first time doing that to someone. He stated that everyone knew what was coming, referring to inmates and prison officials. I was the only one unaware. He also stated that they watched for awhile when I was being beating before intervening. His comments show that he and other prison officials knew I was in danger and disregarded that risk to plaintiffs health and safety.

# C. CAUSE OF ACTION

C.1) COUNT III: Defendants were deliberately indifferent to Plantiffs serious medical needs. Defendant failed to conduct an adequate examination of Plantiffs serious injuries and symptoms. Defendant failed to provide Plantiff pain medication prescribed by doctor.

C.2) SUPPORTING FACTS: On 6-26-2020 after Plantiff was unprovokingly attacked by his cellmate he was escorted to EDCF's medical clinic being held up to walk by two officers. Plantiff was unable to walk on his own. Defendant Rochelle Graham was the examining nurse. She only cleaned a bleeding elbow and never asked any questions about my other injuries. The tennis ball size knot on my forehead and swollen closed black eye should have warranted questions. The fact that I was carried into the room by two guards and held upright on the exam table because of how dizzy I was from the attack should have indicated the seriousness of the head trauma I suffered. These were signs that I could be suffering from a concussion which was told to me by the doctor at the hospital the next day. Nurse Graham Nurse being in the medical profession should have received this from the symptoms I exhibited and followed protocol. Instead she failed to inquire into the essential facts necessary to make professional judgement. I suffered substantially from the pain of a broken eye socket and symptoms from an concussion because Nurse Graham failed to conduct an adequate examination. She showed no regard for my condition. I should have been treated for my injuries and symptoms that day instead I was taken to the infirmary and thrown into a suicide cell at the end of the building and left to die. I had no emergency call button in the room to get the nurses attention. I had to beat on the window multiple times to get their attention which was debilitating because of my condition.

C.3) Defendants denied Plantiff access to medical personnel qualified to exercise judgment about Plantiffs serious symptoms and injuries.

SUPPORTING FACTS: Jane Doe was the working nurse in the infirmary on 6-26-2020 and John Doe was the working officer. I had to beat on the window multiple times to get their attention and complain about the severe pain I was suffering from because of my eye and the extreme dizziness and vomiting I was experiencing.

## C. CAUSE OF ACTION

(3). They both would tell me there was nothing they could do. I asked to see a doctor or to talk to someone who could help me because I wasn't feeling right and something was seriously wrong. I was in a constant state of dizziness and I was vomiting repeatedly.

14. Jane Doe gave me 2 pills of Ibuprofen. She later came back and handed me 5 small pills. As she was walking off I heard her tell John Doe "I never seen anyone take so many." I looked at the pills and noticed they were my prescribed prednisone meds that I am only to take 1 pill 1 time a day. I did not take them because I know they are steroids and to many could cause an overdose or could be fatal. Defendants actions were malicious. I would try to sleep but every time I laid down and closed my eyes the room would spin and I would begin to vomit again. I communicated this to Jane Doe and John Doe to no avail. I know that going to sleep with a concussion or and head trauma could be fatal. I suffered through the night in severe pain and praying to God I didn't die. Defendants were deliberately indifferent to my serious medical needs. They disregarded an excessive risk to plaintiffs health and safety. Protocol was not followed. Defendants seemed to try and keep the incident isolated. Defendants denied me access to medical personnel qualified to exercise judgment about plaintiffs symptoms which were symptoms of an concussion and the pain from a broken eye socket. Defendants decision not to call anyone caused me substantial pain and could have cost me my life. The nurses on the next shift made it to me that afternoon while doing their rounds and I communicated my condition to them. They then made the decision to change my visit to the hospital to be checked.

(4) Plaintiff claims Defendants actions demonstrated a disregard and pose an excessive risk to plaintiffs health and safety.

(5) Supporting facts: On 6-27-2020 around 3:15 Defendant Lou Gannon and C.O.I.C.J. Freeman transported me to an offsite hospital. The hospital staff conducted a blood test and x-ray's. The x-rays revealed I suffered severe head trauma and a fractured eye socket that may require surgery. Both defendants had to be stopped by the hospitals doctor from rushing me out the door to leave.

## C. CAUSE OF ACTION

(4): The doctors stopped us at the door and explained to them that I hadn't been discharged and he wasn't finished evaluating me. I was given medication by needle injection to the hip and as soon as the nurse finished and left the room I was again rushed out the door of the hospital. I was escorted out the door without the nurse removing the I.V. needle that was still in the veins of my arm that was used to draw blood. I communicated this to them both and they stated it would be alright til we get to the facility. I made back trip off with the I.V. needle in my arm. Once in the infirmary I communicated to Jane Doe and she stated leave it in. It was leaking blood and the tape that was holding the needle in place wasn't sticking anymore. The needle was loose and I had to hold my arm out straight because if I bent my arm close the needle would move and stick me further and cause pain. I left it in and dealt with the discomfort thinking Jane Doe was going to remove it. I wasn't having anymore blood work done and I didn't see any reason why it should stay in my arm in its condition. It was leaking and filled with blood. Around 12:00am John Doe who was OIC in the infirmary told me I was moving. I showed him my arm and told him I was taking it out. I put it in a paper bag and John Doe disposed of it when he moved me to a room with a bed and call button. Defendant's actions demonstrated a disregard and posed an excessive risk to Plaintiff's health and safety. Jane Doe refused to do her job and assist me.

(5): Defendant ignored doctors orders and his decision rendered Plaintiff unable to receive pain medication prescribed by doctor.

(5) SUPPORTING FACTS: On the morning of 6-28-2020 John Doe was the working medical provider I talked to about the pain I was experiencing. I asked to take a shower and to use the phone cause I was denied

## C. Cause of Action

(5): Since I entered the infirmary, I told him I wanted to let my family know what happened to me. He stated "you don't have to be here". I told him I didn't expect to leave in my condition I just wanted to use the phone and take a shower. I still had mace on me from the incident. I was later moved back to A2 cellhouse #123. This was against the doctors orders. They told me not to return to the cellhouse, to stay in the infirmary and heal, to follow up with the specialist and to take the medication he prescribed. I was unable to receive the pain medication prescribed because it was considered a narcotic and not allowed outside of the infirmary. I was without pain medication and suffered severe pain and headaches because of my injuries. I was left in pain vulnerable and unable to protect muse- lf back in the cellhouse. I suffered substantially because of defendants decision to kick me out of the infirmary where I could've received my medication.