(Rev. 12/2020)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS

INFORMATION AND INSTRUCTIONS

FOR PRISONERS FILING

CIVIL RIGHTS COMPLAINTS UNDER 42 U.S.C. § 1983 or BIVENS ACTIONS

1.   FORMS
The attached form is to assist you in the preparation of a complaint seeking relief for violation of civil rights under either 42 U.S.C. § 1983 (defendants are state officials) or a Bivens action (defendants are federal officials). These forms may be filled out by typewriter or by hand. Handwriting must be clear and readable. Every question on the forms must be answered, even if your answer is "no," or "don't know." The use of forms is required by D. Kan. Rule 9.1(a).

Do not write on the back of the complaint forms. If you need more space, use additional sheets of paper. Federal rules require that the complaint be a BRIEF statement. Stick to the facts (who, what, when, where, why, how). Always include dates, times, places, and names.

Pursuant to D. Kan. Rule 7.1(e), the argument and authorities section of a brief or memorandum in a civil action may not exceed 30 pages absent an order of the court.

2.   COPIES NOT REQUIRED
Pursuant to D. Kan. Rule 9.1(h), petitioners, movants, and plaintiffs need only submit the ORIGINAL petition, motion, or complaint to the clerk for filing. Additional copies are not required.

It is your responsibility to keep a copy for your records of every complaint and other document or letter that you send to the court.

3.   SIGNATURE REQUIRED
You must personally sign the complaint, motion, or petition. If there is more than one plaintiff, each person must sign. You may not sign for anyone else.

4.   TENDER OF PLEADINGS
When your complaint or pleading is completed, it should be transmitted to the clerk of the court with the appropriate filing fee or in forma pauperis motion.

If you are incarcerated in a facility with mandatory electronic filing, you should follow instructions available at the facility for transmitting the pleading electronically to the court.

(Rev. 12/2020)

If you are not subject to mandatory electronic filing, you should mail the pleading to:

SKYLER B. O'HARA, CLERK OF COURT
UNITED STATES DISTRICT COURT
444 S.E. QUINCY
TOPEKA, KANSAS 66683

### 5.   FILING FEES

The complaint must be accompanied by a filing fee or a motion for leave to proceed in forma pauperis. The statutory filing fee for civil rights complaints is $402.00.[1] If you cannot afford to prepay the filing fee, you may request permission to proceed in forma pauperis by completing a form motion available from the court and submitting certified copies of your institutional financial records for the six months preceding your motion for leave to proceed in forma pauperis.

After receiving these materials, the court will assess an initial partial filing fee that is the greater of (a) 20% of the average monthly deposits in your account for the past six months; OR (b) 20% of the average monthly balance in your account for the past six months.

If your motion is granted, you will be allowed to pay the filing fee in installments, and you must pay 20% of each month's income in every month your institutional account balance exceeds ten dollars ($10.00) until the full filing fee is paid. See 28 U.S.C. § 1915(b). The financial officer of the facility where you are incarcerated will be directed to make these payments, and it is your responsibility to cooperate with facility personnel to authorize these arrangements. The failure to cooperate may result in sanctions by the court. You must pay the full filing fee even if your case is dismissed by the court.

If you have no assets, you will not be prohibited from bringing an action without payment of an initial partial fee. See 28 U.S.C. § 1915(b)(4). However, when you receive assets, you must pay the filing fee as described.

If you have had three or more civil actions or appeals dismissed as frivolous, malicious, or for failure to state a claim, you are no longer eligible to proceed without prepayment of the full filing fee unless you are under serious danger of serious physical injury. See 28 U.S.C. § 1915(g).

### 6.   SERVICE

Once you have submitted the portion of the filing fee directed by the court, the court will review your claims to determine whether summons or waiver of summons forms should be issued to the defendants. Your complaint should list the complete name and address of each person named as a defendant. Without this information, the Clerk cannot prepare summons or waivers for issuance by the Marshal. See Rule 4 of the Federal Rules of Civil Procedure.

(Rev. 12/2020)

7.   AFTER THE COMPLAINT IS FILED

You must comply with court rules, which include keeping the court informed in writing of your current address. See D. Kan. R. 5(c)(3). If you fail to comply with this or any other court rule or fail to comply with any court imposed deadline, your case may be dismissed for want of prosecution.

Exhibits included with the complaint or a pleading are considered part of the court record and will not be returned.

8.   MOTIONS

A request for any type of relief must be in the form of a proper motion beginning with the case caption and title of the motion.

9.   COMMUNICATION WITH THE COURT

It is improper to communicate directly with a Judge or Magistrate Judge concerning matters which are or may become a subject in Court. Procedural questions may be directed to the clerk's office, but Judges, Magistrate Judges, and court staff are prohibited from giving legal advice.

10. EXHAUSTION OF ADMINISTRATIVE REMEDIES UNDER THE PRISON LITIGATION REFORM ACT (PLRA)

You may not bring an action challenging prison conditions under 42 U.S.C. § 1983 or any other federal law until you have exhausted available administrative remedies.

---

[1] Effective December 1, 2020, there is a $52 general administrative fee for filing a civil action, suit, or proceeding in a district court. This fee is in addition to the existing civil filing fee of $350. Therefore, effective December 1, 2020, the total fee for filing a new civil case will be $402. This new fee is part of the "District Court Miscellaneous Fee Schedule", established by the Judicial Conference of the United States, pursuant to 28 U.S.C. § 1914. This fee does not apply to persons granted in forma pauperis status under 28 U.S.C. § 1915.

Damian M. Bateast #110348
Name

EDCF P.O. Box 311

El Dorado, Kansas 67042
Address

Team
Judy Nemand

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

Damian M. Bateast , Plaintiff
*(Full Name)*

CASE NO.   22-3093-SAC
*(To be supplied by the Clerk)*

v.

Uwatosin S. Orunsolu, Adam D. Knapp, ~~Warden~~ CDCF
JV Gannon, Mahli Martin
ana L. Flores, JS Blevins, Cathium,
Schelle Gantier, Brandon Gaines, Oranio N Perez
aul J. Freeman, Jane Doe, John Doe, John Doe , Defendant (s)

AMENDED
CIVIL RIGHTS COMPLAINT
PURSUANT TO 42 U.S.C.
§1983

## A. JURISDICTION

1) Damian M. Bateast , is a citizen of Kansas
   *(Plaintiff)*                              *(State)*

   who presently resides at EDCF P.O. Box 311
                                                  *(Mailing address or place*
   El Dorado, Kansas 67042          .
   *of confinement.)*

2) Defendant Oluwatosin S. Orunsolu is a citizen of
                *(Name of first defendant)*

   El Dorado, Kansas , and is employed as
   *(City, State)*

   CCI Unit team . At the time the
   *(Position and title, if any)*

   claim(s) alleged in this complaint arose, was this defendant acting under the color of state

   law? Yes ☑ No ☐. If your answer is "Yes", briefly explain:

   Oluwatosin S. Orunsolu was performing as
   Unit team in cellhouse A-2 on 6-26-2020 at EDCF

XE-2 8/82          CIVIL RIGHTS COMPLAINT §1983

3) Defendant _Adam D. Knapp_____ is a citizen of
   *(Name of second defendant)*

   _El Dorado , Kansas_____, and is employed as
   *(City, state)*

   _CCI Unit team_____. At the time the
   *(Position and title, if any)*

   claim (s) alleged in this complaint arose was this defendant acting under the color of state

   law? Yes ☑ No ☐ . If your answer is "Yes", briefly explain:

   _Adam D. Knapp was performing as Unit team_

   _in cellhouse A-2 on 6-26-2020 at EDCF_

   (Use the back of this page to furnish the above information for additional defendants.)

4) Jurisdiction is invoked pursuant to 28 U.S.C. §1343(3); 42 U.S.C. §1983. (If you wish to

   assert jurisdiction under different or additional statutes, you may list them below.)

   _____

   _____

## B. NATURE OF THE CASE

1) Briefly state the background of your case:

   _I was unspectingly attacked by my cellmate an osa_

   _Inmate considered by officials to be a threat to prison_

   _population. I was under protective custody. Prison official_

   _failed to protect me. I suffered serious injuries, I wasn't_

   _given proper medical attention, I wasn't given pain meds_

   _prescribed by the doctor. Plantiff alleges that Prison_

   _officials violated his Eighth and Fourteenth amend-_

   _-ments. Prison staff and Medical staff acted with malicous_

   _intent._

## THE DEFENDANTS

DEFENDANT Molly J. Martin is a citizen of El Dorado Kansas and is employed as unit team manager. At the time the claims alleged in the complaint arose was this defendant acting under color of state law? YES
Molly J. Martin was performing as unit team manager in cellhouse A at El Dorado Correctional Facility.

DEFENDANT Dana L. Flores is a citizen of El Dorado Kansas and is employed as COI B corrections officer. At the time the claims alleged in this complaint arose was this defendant acting under color of state law? YES
Dana L. Flores was performing as an corrections officer in cellhouse A-2 on 6-26-2020 at El Dorado Correctional Facility.

DEFENDANT Asbury H. Lathoum is a citizen of El Dorado Kansas and is employed as COI B corrections officer. At the time the claims alleged in this complaint arose was this defendant acting under color of state law? YES
Asbury H. Lathoum was performing as an corrections officer in cellhouse A-2 on 6-26-2020 at El Dorado Correctional Facility.

DEFENDANT Brandon L. Gaines is a citizen of El Dorado Kansas and is employed as CDIA corrections officer. At the time the claims alleged in this complaint arose was this defendant acting under color of state law? YES
Brandon L. Gaines was performing as an corrections officer in cellhouse A-2 on 6-26-2020 at El Dorado Correction Facility.

DEFENDANT Orlando A. Perez is a citizen of El Dorado Kansas and is employed as COI B corrections officer. At the time the claims alleged in this complaint arose was this defendant acting under color of state law? YES
Orlando A. Perez was performing as an correction officer in cellhouse A-2 on 6-26-2020 at El Dorado Correctional Facility.

1

→ Back

DEFENDANTS

Defendant Rochelle Graham is a citizen of El Dorado Kansas and is employed as Nurse. At the time the claims alleged in this complaint arose was this Defendant acting under color of state law? YES

Rochelle Graham was performing as a Nurse at El Dorado Correctional Facility Clinic on 6-26-2020.

Defendant Guy Gannon is a citizen of El Dorado Kansas and is employed as COI B Corrections Officer. At the time the claims alleged in this complaint arose was this Defendant acting under color of state law? YES

Guy Gannon was performing as a Correctional Officer doing transport for El Dorado Correctional Facility on 6-27-2020

Defendant Eric J. Freeman is a citizen of El Dorado Kansas and is employed as COI B Corrections Officer. At the time the claim alleged in this complaint arose was this Defendant acting under color of state law? YES

Eric J. Freeman was performing as a Corrections Officer doing transports for El Dorado Correctional Facility on 7-27-2020

Defendant Jane Doe is a citizen of El Dorado Kansas and is employed as Nurse. At the time the claims alleged in this complaint arose was this Defendant acting under color of state law? YES

Jane Doe was performing as a Nurse in the Infirmary at El Dorado Correctional Facility on 6-26-2020.

Defendant John Doe is a citizen of El Dorado Kansas and is employed as Corrections Officer. At the time the claims in this complaint arose, was this Defendant acting under color of state law? YES

John Doe was performing as a Corrections Officer in the Infirmary at El Dorado Correctional Facility on 6-26-2020

## DEFENDANTS

Defendant John Doe is a citizen of Eldorado Kansas and is employed as medical provider. At the time the claims alleged in this complaint arose was this defendant acting under color of state law? Yes

John Doe was performing as a medical provider in the infirmary at Eldorado Correctional facility on 6-27-2020

Defendant Eldorado Correctional facility is a citizen of Eldorado Kansas and is employed as EDCF. At the time the claims alleged in this complaint arose was this defendant acting under color of state law? Yes

Eldorado Correctional facility is where I was attacked by an inmate that was placed in the cell with me that EDCF and it's employee's considered a threat to prison population.

## C. CAUSE OF ACTION

1) I allege that the following of my constitutional rights, privileges or immunities have been

   violated and that the following facts form the basis for my allegations: (If necessary you

   may attach up to two additional pages (8h" x 11") to explain any allegation or to list

   additional supporting facts.)

A) (1) Count I: find attached →

   (2) Supporting Facts: (Include all facts you consider important, including names of

   persons involved, places and dates. Describe exactly how each defendant is involved.

   State the facts clearly in your own words without citing legal authority or argument.):

B) (1) Count II: find attached →

   (2) Supporting Facts:

3

## C. Cause of Action

(1) Count 1: Plaintiff claims defendants violated his Eighth Amendment right which prohibits cruel and unusual punishment. Defendants were deliberately indifferent to plaintiffs need for safety by failing to provide proper protection from inmate assault while in protective custody. Plaintiff claims defendants violated his Fourteenth amendment right to be protected equally under the law.

(2) Supporting Facts: CDCF's policy or lack thereof allows inmates in protective custody who are in protective custody to escape potential violence to be double celled in restrictive housing with punitive inmates, violent, rapers, gang affiliates which defeats the purpose of protective custody and creates a hostile environment also creates potential violence for that inmate. If CDCF has a policy that doesn't allow the mixing of these inmates the CDCF and its employees have violated that policy. It is CDCFs and its employees responsibility to provide plaintiff with proper protection from inmate assault while in protective custody. CDCF and its employees have failed to do so. Plaintiff has been unprovokingly attacked and seriously injured multiple times by cellmates at different facilities while in protective custody. Plaintiff still faces potential violence because his situation hasn't changed. Plaintiff has requested prison officials to be celled alone many times but has been told that there isn't enough room for a every inmate to be self celled. Because of over crowding, I know of multiple inmates who occupy their own cell and are safe. Plaintiffs situation of being injured multiple times by cellmates should be an indicator to prison officials that he is not safe. Prison officials have put me in many dangerous situations. I am supposed to be safe instead I am being threatened and punished for being in protective custody. My placement in protective custody is the key factor that let officials know that I am at risk of serious harm from other inmates but they have disregarded that risk is double because of their violent inmates in restrictive housing. I hold CDCF and its employees responsible and liable for celling me with punitive behaviors. I hold CDCF and its employees responsible and liable.

1

## C. Cause of Action

(3): Plaintiff claims Defendant disregarded a known risk to Plaintiffs health and safety, Plaintiff claims Defendant exposed his P.C status to the entire cellhouse that made Plaintiff a target and caused irreparable harm.

(3) Supporting facts: Defendants Okwudasin S. Odunsolu, Adam D. Knapp, and Mathew J. Martin, Martin was Unit team and unit team monager in cell house A-2 at El Dorado correctional facility. It was Defendants job to assign inmate to these cells among other duties. Defendants assigned inmate Austin #893510 an osa (other security prison) inmate as Plaintiffs cellmate was in protective custody for safety reasons. An osa inmate is placed in segregation because they present an extended security threat due to violent and disruptive behaviors. They are considered to be a threat to prison population. Inmate Austin is a prominent gang affiliate, who is well known for his violent attitude and unprovokingly attacking his cellmates. Plaintiff and Austin should have never been celled together for these reasons alone. If prison official considered inmate Austin behavior was so extreme and violent that they placed him in long term segregation because he was a threat to prison population, then why would they place him in a small cell with an inmate who is on P.C and in segregation to escape violence. This creates an hostile environment and shows neglect in their part. Plaintiffs placement into protective custody is the component that shows Defendants where he was at risk of serious harm from other inmates because they made the decision for placement. Defendants disregarded that known risk by double celling Plaintiff with an osa inmate they themselves segregated because they considered him to be excessively violent and a threat to others. On 6-26-2020 unit team Knapp made his rounds and engaged in a heated conversation with inmate Austin, Austin was mad about not being able to get out of Restrictive Housing. It was said by Knapp that in order for that to happen an event has to happen.

## C. CAUSE OF ACTION

(3): In order for Austin to be moved. An event that had to happen I later found out was in reference to Austin attacking me. This comment Knapp shows he knew what would transpire and even condoned it. This was not the first situation where plaintiff was facing harm because of Knapps neglect. Later that day while being handcuffed by officers from shower as behind the back unable to defend hisself inmate Austin unprovokingly attacked plaintiff and struck him multiple time in the face and head with a lock that is considered contraband in restrictive housing. Plaintiff suffered serious injuries and was transported to an offsite hospital the following day. After the incident not even 2 weeks after I witnessed as Austin walked out of a cellhouse as if he didn't suffer any disciplinary consequences for attacking me. Plaintiff alleges the attack was orchestrated by certain prison officials. Defendants showed no regard for plaintiffs safety.

(4): Plaintiff claims defendant Brunsoll exposed his P.C. status to the entire cellhouse in an forced attempt to get plaintiff to sign a P.C. waiver that made him a target and caused irreparable harm to plaintiff.

A)(4): Supporting facts: Plaintiff stopped Brunsoll as he was passing his cell and asked to be moved to another cell. Brunsoll got hostile with me and stated "why don't you just go to general population." I told him I wasn't safe in general population and under the circumstances I'm not safe now. He stated I was just being scared. I told him I was trying be safe and he should do his job and protect me. He stated either I waived off. He then returned with a P.C. waiver and stated either sign this P.C. waiver and go to population. He then slide the waiver through the door to me. I told him I'm not signing that and slide it back to him. He stated it doesn't matter if you sign it or not. He left meant this with malicious intent. I told him he left

## C. Cause of Action

1).(4): "Everyone knows my business and he stated who cares". He Grabbed the waiver and walked away from the door. I wasn't moved. This display exposed my status to the entire cellhouse which made me a target. I have had altercations with other cellie' because of my status. No one wants to cell with a cheato-11 because you are considered a snitch. In order to be placed in protective Custody you have to inform prison officials of who or what and why you need protection. Inmates consider this snitching and label you. My status was confidential among inmates and should have stayed that way. Everyone I've celled with has had a problem with me because of this. I've suffered from anxiety and depression from all the conflict behind my status being expose[d]. Defendents action was malicous and caused irrepar[a]ble harm to plantiff. Defendants promoted violence towards Plantiff and put his life in danger.

## C. CAUSE OF ACTION

5)(1) COUNT II: PLAINTIFF CLAIMS DEFENDANT WERE DELIBERATE INDIFFERENT TO HIS NEED FOR SAFETY AND VIOLATED HIS EIGHTH AMENDMENT RIGTH.

5)(2) SUPPORTING FACTS: DEFENDANTS NANCY FLORES AND AUSABAY H. LATHERUM WERE CORRECTION OFFICERS AT EL DORADO CORRECTIONAL FACILITY IN CELLHOUSE A-2 ON 6-26-2020. DEFENDANTS CARRIED OUT A CELL MOVE. THE MORNING OF BY MOVING PLANTIFF AND HIS CELL MATE FROM CELL #211 TO CELL #123. WE WERE ALLOWED TO TAKE OUR PROPERTY BUT NOT OUR MATTRESSES. INMATE AUSTIN #89935 ASK C.O. FLORES FOR HIS MATTRESS AND SHE REPLIED THEY WOULD PROVIDE US NEW MATTRESSES IN CELL #123 WHICH THEY DID. INMATE AUSTIN WAS ADAMANT ABOUT RECEIVING HIS PREVIOUS MATTRESS LEFT IN CELL #211 BUT WAS DENIED BY DEFENDANTS. AUSTIN CALLED C.O. FLORES TO THE DOOR AND HAD A CONVERSATION WITH HER IN A BAREW AUDIBLE TONE. SHE LEFT AND RETURNED WITH THE MATTRESS. I LATER FOUND OUT THAT HIS MATTRESS CONCEALED THE LOCK THAT HE USED IN THE UNPROVOKED ATTACK AGAINST ME. PLANTIFF CLAIMS OFFICERS ACTIONS WERE DONE WITH MALICE BECAUSE THERE WAS NO LEGITIMATE REASON FOR THEM TO PROVIDE AUSTIN WITH A SECOND MATTRESS AFTER DENING HIS REQUEST UNLESS THEY KNEW OF HIS INTENTIONS. PLANTIFF CLAIMS THAT AUSTIN'S CONVERSATION WITH FLORES REVEALED WHAT WAS IN THE MATTRESS AND HIS INTENTIONS OF ATTACK AGAINST ME. FLORES HAD KNOWLEDGE OF WHAT WOULD TRANSPIRE AND ASSISTED BY HER ACTIONS. IN ANOTHER INCIDENT CONCERNING THE SAME CIRCUMSTANCES WHERE PLANTIFF WAS ATTACKED BY HIS CELLMATE C.O. FLORES WAS THE OFFICER WHO GAVE THE INMATE HIS PROPERTY THAT HELD RAZORS AND A LOCK THAT WAS USED TO INJURE PLANTIFF. THESE ITEMS ARE CONSIDERED CONTRABAND IN SEG REGATION. I SUFFERED A SLICED EAR THAT REQUIRED STITCHES A SWOLLEN SHUT BLACK EYE AND MANY KNOTS. THIS MAKES TH SECOND INCIDENT WHERE SHE WAS RESPONSIBLE FOR PROVIDING

5

C. CAUSE OF ACTION

5)(2): My attacher with weapons, C.O. Flores made the comment to Plaintiff in regards to her participation in his attack by saying "NO ONE will believe your story" Her comment to me was a confession of her guilt and admittance of her participation. She was fully aware of what was to transpire and she intentionally assisted Inmate Austin in his attack against me by providing him with that mattress concealing the weapon used. It's well known and established that officers are not to provide inmates with extra mattresses unless approved by medical or the warden which was not the case in this incident. This also is an indicater that defendants mental state was not in a good place that they would even violate prison policy. Defendants actions were malicious. Plaintiff claims that C.O. Flores had motive to retaliate against him because of grievances he wrote addressing the fact she was passing him contaminated food trays.

5)(3): Defendants Brandon L Gaines and Orlando A. Perez were working as correction officers at El Dorado correctional facility in cell house A-2. On the evening of 0-26-2020 both officers conducted showers. They approached the cell door and announced showers. As I was at the door getting handcuffed by C.O. Gaines I noticed inmate Austin going through his mattress. He and C. Gaines were giving each other signals with their head and eyes. When I felt Gaines lock the second cuff I begin to walk away from the door but he was holdin the cuffs by the middle chain which prevented me for moving. When I turned my head to ask what the problem was I was struck in the face which dazed me. I was unable to see for a moment and unable to protect my self because I was handcuffed behind the back. I do believe the signals Austin and C.O. Gaines shared is an indicater that Gaines knew what was about to transpire and deliberately held me in place at

## C. Cause of action

3)(3): The door which rendered me vulnerable and unable to move while inmate Austin stabbed me with the weapon. I endured Austins beating until officers intervened which took an substantial amount of time. Officers sprayed us with mace and Austin ceased his attack. He walked to the door to be cuffed but stopped because he still had the lock in his hand which is considered contraband in segregation. He walked to his bunk and placed the lock in a hole in his mattress. He then went to the door and Gaines cuffed him. We were pulled out the cell and the entire cellhouse erupted into laughter and ridicule because of the injuries I suffered from. I was then escorted to the clinic between two officers. I was to dizzy to walk alone. The next day 6-27-2020 while in the infirmary C.O. Gaines paid me a visit. He looked at me with a smile and stated "You don't look so good." He then asked hows his brain functioning"? I stated "all cylinders firing". When I spoke he looked disappointed and stated "well that's that it didn't work". He turned and left without another word. His comment indicated to me that his actions were intentional and deliberate. On a return visit from the specialist C.O. Perez held a conversation with me while being escorted to the cellhouse. He stated that it wasn't Austins first time doing that to someone. He stated that everyone knew what was coming, referring to inmates and prison officials. I was the only one unaware. He also stated that they watched for a while when I was being beating before intervening. His comments show that he and other prison officials knew I was in danger and disregarded that threat to plaintiffs health and safety.

C. CAUSE OF ACTION

1) COUNT III: DEFENDANTS WERE DELIBERATELY INDIFFERENT TO PLAINTIFFS SERIOUS MEDICAL NEEDS, DEFENDANT FAILED TO CONDUCT AN ADEQUATE EXAMINATION OF PLAINTIFFS SERIA INJURIES AND SYMPTOMS. DEFENDANT FAILED TO PROVIDE PLAINTIFF PAIN MEDICATION PRESCRIBED BY DOCTOR.

2) SUPPORTING FACTS: ON 6-26-2020 AFTER PLAINTIFF WAS UNKNOWINGLY ATTACKED BY HIS CELLMATE HE WAS ESCORTED TO EDCF'S MEDICAL CLINIC BEING HELD UP TO WALK BY TWO OFFICERS. PLAINTIFF WAS UNABLE TO WALK ON HIS OWN. DEFENDAN ROCHELLE GRAHAM WAS THE EXAMINING NURSE. SHE ONLY CLEAN A BLEEDING ELBOW AND NEVER ASKED ANY QUESTIONS ABOUT MY OTHER INJURIES. THE TENNIS BALL SIZE KNOT ON MY FOREHEAD AND SWOLLEN CLOSED BLACK EYE SHOULD HAVE WARRANTED QUES IONS. THE FACT THAT I WAS CARRIED INTO THE ROOM BY TWO GUAR AND HELD UPRIGHT ON THE EXAM TABLE BECAUSE OF HOW DIZZY I WAS FROM THE ATTACK SHOULD HAVE INDICATED THE SERIOUSNE OF THE HEAD TRAUMA I SUFFERED. THESE WERE SIGNS THAT I WOULD BE SUFFERING FROM A CONCUSSION WHICH WAS TOLD TO ME BY THE DOCTOR AT THE HOSPITAL THE NEXT DAY. NURSE GRAHE A NURSE BEING IN THE MEDICAL PROFFESSION SHOULD HAVE REACT ED TO THIS FROM THE SYMPTOMS I EXHIBITED AND FOLLOWED PROPER OT. INSTEAD SHE FAILED TO INQUIRE INTO THE ESSENTIAL FACTS NECESSARY TO MAKE PROFESSIONAL JUDGMENT. I SUFFERED SUBSTANTIALLY FROM THE PAIN OF A BROKEN EYE SOCKET AND SYMPTOMS FROM AN CONCUSSION BECAUSE NURSE GRAHAM FAILED TO CONDUCT AN ADEQUATE EXAMINATION. SHE SHOWED NO REGARD FOR MY CONDITION. I SHOULD HAVE BEEN TREATED FOR MY INJURIES AND SYMPTOMS THAT DAY INSTEAD I WAS TAKEN TO THE INFIRMARY AND THROWN INTO A SUICIDE CELL AT THE END OF THE BUILDING AND LEFT TO DIE. I HAD NO EMERGENCY CALL BUTTON IN THE ROOM TO GET THE NURSES ATTENTION, I HAD TO BEAT ON THE WINDOW MULTIPLE TIMES TO GET THE ATTENTION WHICH WAS DEBILITATING BECAUSE OF MY CONDITION.

3) DEFENDANTS DENIED PLAINTIFF ACCESS TO MEDICAL PERSONNEL QUALIFIED TO EXERCISE JUDGMENT ABOUT PLAINTIFFS SERIOUS SYMPTOMS AND INJURIES.
SUPPORTING FACTS: JANE DOE WAS THE WORKING NURSE IN THE INFIRMARY ON 6-26-2020 AND JOHN DOE WAS THE WORKING OFFICER. I HAD TO BEAT ON THE WINDOW MULTIPLE TIMES TO GET THEIR ATTENTION AND COMPLAIN ABOUT THE SEVERE PAIN I WAS SUFFERING FROM BECAUSE OF MY EYE AND THE EXTREME DIZZINESS AND VOMITING I WAS EXPERIENCING.

## C. CAUSE OF ACTION

3) They both would tell me there was nothing that I could do. I asked to see a doctor or to talk to someone who could help me because I wasn't feeling right and something was seriously wrong. I was in a constant state of dizziness and I was vomiting despite

14. Jane Doe gave me 2 pills of IB profelin. She later came back and handed me 5 small pills, as she was walking off I heard her tell John Doe "I never seen anyone take so many." I looked at the pills and noticed they were my prescribed prednisone meds that I am only to take 1 pill 1 time a day. I did not take them because I know they are steroids and to many could cause an overdose or could be fatal. Defendants actions were malicious, I would try to sleep but every time I laid down and closed my eyes the room would spin and I would begin to vomit again. I communicated this to Jane Doe and John Doe to no avail. I know that going to sleep with a concussion or head trauma could be fatal. I suffered throught the night in severe pain and praying to GOD I didn't die. Defendants were deliberately indifferent to my serious medical needs. They disregarded an excessive risk to plaintiffs health and safety, protocol was not followed. Defendants seemed to try and keep the incident isolated. Defendants denied me access to medical personnel qualified to excercise judgment about plaintiffs symptoms which were symptoms of an concussion and the pain form a broken eye socket. Defendants decision not to call anyone caused me substential pain and could have cost me my life, the nurses on the next shift made it to me that a different while doing their rounds and I communicated my condition to them. They then made the decision to change my visit to the hospital to be checked.

4) Plaintiff claims Defendants actions demonstrated a disregard and pose an excessive risk to plaintiffs health and safety.

4) SUPPORTING FACTS: On 6-27-2016 around 3 in Defend you Gannon and Eric). Freeman toans profed me to an offsi hospital. The hospital staff conducted a bloodtest and x the x-rays revealed I suffered severe head trauma and a fractured eye socket that may require surgery. Both Defendants had to be stopped by the hospitals doctor from rushing me out the door to leave.

9

## C. CAUSE OF ACTION

5)(5): Since I entered the infirmary, I told him I wants to let my family know what happened to me. He stat "you don't have to be here". I told him I didn't expect to leave in my condition I just wanted to use the phone an take a shower. I still had mace on me from the inciden. I was later moved back to A2 cellhouse #123. This wa against the doctors orders. They were for me not to return to the cellhouse, to stay in the infirmary and heal, to follow up with the specialist and to take the medication he prescribed. I was unable to receive the pain medication prescribed because it was consic ered an narcotic and not allowed outside of the infirmary. I was without pain medication and suffered severe pain and headaces because of my injuries. I was left in pain vunerabile and unable to protect mys if back in the cellhouse. I suffered substantially because of defendants decision to kick me out of the infirmary where I could've recieved my medication

11

C) (1) Count III: _Find attached →_ _____

_____

_____

(2) Supporting Facts: _____

_____

_____

_____

### D.  PREVIOUS LAWSUITS AND ADMINISTRATIVE RELIEF

1) Have you begun other lawsuits in state or federal court dealing with the same facts

involved in this action or otherwise relating to the conditions of your imprisonment?

Yes ☐  No ☑ . If your answer if "Yes", describe each lawsuit. (If there is more than

one lawsuit, describe the additional lawsuits on another piece of paper, using the same

outline.)

  a)  Parties to previous lawsuit:

    Plaintiffs: _____

    Defendants: _____

  b)  Name of court and docket number _____

    _____

  c)  Disposition (for example: Was the case dismissed? Was it appealed? Is it still

    pending?) _____

    _____

  d)  Issues raised _____

    _____

XE-2 8/82          CIVIL RIGHTS COMPLAINT §1983

e) Approximate date of filing lawsuit _____

f) Approximate date of disposition _____

1) I have previously sought informal or formal relief from the appropriate administrative

officials regarding the acts complained of in Part C Yes ☑ No ☐ . If your answer is

"Yes", briefly describe how relief was sought and the results. If you answer is "No",

briefly explain why administrative relief was not sought.

I sought relief by Grievance at EDCF. I followed the procedure mentioned in the KDOC Inmate hand book but received no response from officials. I then submitted my Grievance to the Secretary of Corrections who did respond but did not address the issues in the Grievance.

2) REQUEST FOR RELIEF

1) I believe that I am entitled to the following relief:

Compensatory Damages against each Defendant in the amount of 25,000. Punitive Damages from each Defendant in the amount of 25,000. Declaratory Judgement. Injunction requiring prison officials to see cell Plantiff until he can be transferred to an minimum security prison Plantiff is not safe. Prison officials are retaliating through other inmates and contaminating Plantiffs food.

_Damian M. Batomost #118348_

_____                    _____
Signature of Attorney (if any)                                Signature of Plaintiff

_____

_____

_____
(Attorney's full address and telephone number)

5

XE-2 8/82                    CIVIL RIGHTS COMPLAINT §1983