## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DAMIAN M. BATEAST,

                             Plaintiff,

           v.                                        CASE NO. 22-3093-SAC

OLUWATOSIN S. ORUNSOLU, et al.,

                             Defendants.

### MEMORANDUM AND ORDER

This matter is a pro se civil rights action.  Plaintiff is a prisoner at the El Dorado Correctional Facility ("EDCF") in El Dorado, Kansas, and he proceeds *in forma pauperis*.  By order dated June 10, 2022 (Doc. 5; "MOSC"), the Court directed Plaintiff to show cause why his Complaint should not be dismissed for the reasons set forth in the order or to file an amended complaint curing the deficiencies.  In response to the MOSC, Plaintiff filed an Amended Complaint (Doc. 6).  Plaintiff's Amended Complaint is now before the Court for screening.  The Court's screening standards are set forth in detail in the MOSC.  Also before the Court is Plaintiff's second motion to appoint counsel (Doc. 7).

Plaintiff brings three counts in his Amended Complaint (Doc. 6).  All three are based on an incident that occurred on June 26, 2020.  Plaintiff states that he was housed in Restrictive Housing at EDCF under protective custody ("PC") for his safety.  He was assigned a cellmate, Inmate Austin, who was in Restrictive Housing for disciplinary reasons and was well known for violence against his cellmates.  Plaintiff was being taken to the showers and his hands had just been cuffed behind his back by Corrections Officer Brandon Gaines when Austin attacked him.

1

Plaintiff alleges that Gaines held onto the chain between the cuffs for some period of time as Austin approached and began to strike him.  Austin hit him in the face and head multiple times with a contraband combination lock.  Plaintiff suffered serious injuries, including a fractured eye socket. Plaintiff had to be supported by two officers as he was taken to the facility's medical clinic, being unable to walk on his own.  There, he was examined by Nurse Rochelle Graham.  She merely cleaned a wound on his elbow despite Plaintiff having a tennis ball-sized knot on his forehead, a black eye that was swollen closed, and having to be held upright on the examination table due to extreme dizziness.  Plaintiff was placed in an isolated suicide watch cell in the infirmary.  The cell did not have an emergency call button.  Plaintiff experienced dizziness, pain, and repeatedly vomited throughout the night.  To get the attention of the nurse and officer working the infirmary, Plaintiff had to beat on the window.  The nurse, whom Plaintiff refers to as Jane Doe, eventually gave Plaintiff two tablets of ibuprofen and five Prednisone tablets.  The next day at about 3:00 p.m., Plaintiff was transported to the hospital by Corrections Officers Gannon and Freeman. There, the treating doctor determined he had suffered a concussion and x-rays revealed his facial injuries.  The doctor prescribed pain medication for Plaintiff.  He was rushed out of the hospital against medical orders by Gannon and Freeman with an IV still in his arm.  When he reached EDCF, he was returned to the cellhouse rather than the infirmary, which was also against the doctor's orders.  This resulted in Plaintiff not receiving the pain medication prescribed at the hospital because EDCF does not allow narcotics outside of the infirmary.

In Count I, Plaintiff alleges Defendants Orunsolu, Knapp, and Martin violated his rights under the Eighth Amendment by failing to provide him with proper protection from inmate assault while in protective custody.  Plaintiff argues that EDCF policy should not allow inmates who are in protective custody to escape potential attack by other inmates to be double-celled with inmates

who are in Restrictive Housing for punitive purposes (classified as Other Security Risk or "OSR"). He claims he has been attacked and injured multiple times by OSR inmates because of his PC status, which Orunsolu exposed to the other inmates in Restrictive Housing in an attempt to force Plaintiff to sign a "PC waiver" so Plaintiff could be returned to the general population. Plaintiff states that he repeatedly asked to be housed alone, but his requests were denied. Plaintiff further alleges that Defendant Knapp engaged in a heated discussion with Austin on June 26, 2020, before the attack. Austin wanted to get out of Restrictive Housing, and Knapp said for that to happen, "an event has to happen." Plaintiff asserts that Knapp was referring to Austin attacking Plaintiff, which shows Knapp was aware of and even condoned Austin's actions. Plaintiff also claims violation of his Fourteenth Amendment right to equal protection.

In Count II, Plaintiff again alleges failure to protect under the Eighth Amendment, this time naming Defendants Flores, Latham, Gaines, and Perez. Gaines and Perez were the officers present for the assault. Flores and Latham had moved Plaintiff and Austin to a new cell the morning before the assault occurred. Austin wanted to bring his mattress from the old cell, and at first the officers refused. Austin then called Flores to the door of the cell and whispered something to her. She left and returned with the mattress. This was the mattress where Austin was hiding the padlock he later used in the assault on Plaintiff. Plaintiff alleges Flores and Latham acted with malice.

In Count III, Plaintiff alleges that Defendants Graham, Gannon, Freeman, Harrod, Jane Doe, and John Doe were deliberately indifferent to his serious medical needs under the Eighth Amendment. He claims Graham failed to conduct an adequate examination of Plaintiff after the assault, that he should not have been put in an isolated cell and ignored, and that he did not receive the medication prescribed by the doctor at the hospital.

Plaintiff names as defendants the following EDCF personnel: Oluwatosin Orunsolu, CCI Unit Team; Adam Knapp, CCI Unit Team; Malty Martin, Unit Team Manager; Dana Flores, Corrections Officer; Asbury Latham, Corrections Officer; Brandon Gaines, Corrections Officer; Orlando Perez, Corrections Officer; Rochelle Graham, Nurse; Eric Freeman, Corrections Officer; FNU Gannon, Corrections Officer; Jane Doe, Nurse; John Doe, Corrections Officer; John Doe #2, Medical Provider; and the El Dorado Correctional Facility.  Plaintiff seeks compensatory damages, punitive damages, and injunctive relief.

The Court finds that the proper processing of Plaintiff's claims cannot be achieved without additional information from appropriate officials of the EDCF.  *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991).  Accordingly, the Court orders the appropriate officials to prepare and file a *Martinez* Report.  Once the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915.

Plaintiff names the EDCF as a defendant.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a *person* acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (emphasis added).  Prison and jail facilities are not proper defendants because none is a "person" subject to suit for money damages under § 1983.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66, 71 (1989); *Clark v. Anderson*, No. 09-3141-SAC, 2009 WL 2355501, at *1 (D. Kan. July 29, 2009); *see also Aston v. Cunningham*, No. 99–4156, 2000 WL 796086 at *4 n.3 (10th Cir. Jun. 21, 2000) ("a detention facility is not a person or legally created entity capable of being sued"); *Busekros v. Iscon*, No. 95-3277-GTV, 1995 WL 462241, at *1 (D. Kan. July 18, 1995) ("[T]he Reno County Jail must be dismissed, as a jail is not a 'person' within the meaning of § 1983.").  Plaintiff's claims against the EDCF are dismissed.

Also before the Court is Plaintiff's Second Motion to Appoint Counsel (Doc. 7).  Plaintiff asks the Court to appoint an attorney to represent him because the issues are complex and will require considerable discovery and possibly expert testimony, he is indigent, he is being held in segregation which limits his ability to investigate the facts of the case, and he has no legal training. He states that he has attempted to contact five attorneys.

Plaintiff's request for the appointment of counsel is denied at this time.  There is no constitutional right to the appointment of counsel in a civil case.  *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989); *Carper v. Deland*, 54 F.3d 613, 616 (10th Cir. 1995).  The decision whether to appoint counsel in a civil matter lies within the discretion of the district court.  *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991).  "The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel."  *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006), quoting *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004).  It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case."  *Steffey,* 461 F.3d at 1223, quoting *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995).  In deciding whether to appoint counsel, the district court should consider "the merits of the prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims."  *Rucks*, 57 F.3d at 979; *Hill*, 393 F.3d at 1115.

Considering these factors, the Court has not yet made the determination of whether or not Plaintiff's claims survive the initial screening required by 28 U.S.C. § 1915.  Therefore, the Court denies Plaintiff's motion for appointment of counsel at this time.  However, this denial is made without prejudice.  If it becomes apparent that appointed counsel is necessary as this case further progresses, Plaintiff may renew his motion.

**IT IS THEREFORE ORDERED THAT** Plaintiff's Second Motion to Appoint Counsel (Doc. 7) is **denied without prejudice.**

**IT IS FURTHER ORDERED** that the El Dorado Correctional Facility is **dismissed** from this case.

**IT IS FURTHER ORDERED** that**:**

(1)     The Court will enter a separate e-service order directing the Clerk of Court to serve the remaining Defendants.

(2)     The Kansas Department of Corrections ("KDOC") shall submit the *Martinez* Report within **sixty (60) days** following the electronic filing of the Waiver of Service Executed. Upon the filing of that Report, the Court will screen Plaintiff's Complaint.  If the Complaint survives screening, the Court will enter a separate order setting an answer deadline.  Therefore, any answer deadline provided in the waiver of service is not controlling.

(3)     Officials responsible for the operation of EDCF are directed to undertake a review of the subject matter of the Complaint:

a.      To ascertain the facts and circumstances;

b.      To consider whether any action can and should be taken by the institution to resolve the subject matter of the Complaint; and

c.      To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this Complaint and should be considered together.

(4)     Upon completion of the review, a written report shall be compiled and served on Plaintiff.  The KDOC must seek leave of the Court if it wishes to file certain exhibits or portions of the report under seal or without service on Plaintiff.  Statements of all witnesses shall be in affidavit form.   Copies  of  pertinent  rules,  regulations,  official  documents,  and,  wherever

appropriate, the reports of medical or psychiatric examinations shall be included in the written report.  Any recordings related to Plaintiff's claims shall also be included.

(5)      Authorization is granted to the officials of EDCF to interview all witnesses having knowledge of the facts, including Plaintiff.

(6)      No answer or motion addressed to the Complaint shall be filed until the *Martinez* Report required herein has been prepared.

(7)      Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed Defendant's answer or response to the Complaint and the report ordered herein.  This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter KDOC as an interested party on the docket for the limited purpose of preparing the *Martinez* Report ordered herein.  Upon the filing of that report, KDOC may move for termination from this action.

Copies of this order shall be transmitted to Plaintiff and to the Attorney General for the State of Kansas.

**IT IS SO ORDERED**.

**Dated September 6, 2022, in Topeka, Kansas.**


**s/  Sam A. Crow**
**SAM A. CROW**
**SENIOR U. S. DISTRICT JUDGE**