Robert E. Wasinger, #15352
Legal Counsel, Department of Corrections
Ellsworth Correctional Facility
P.O. Box 107
Ellsworth, Kansas 67439
(785)877-6657

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **DAMIAN BATEAST** #118348          ) <br>         **Plaintiff**      ) <br> vs.                      ) <br>                          ) <br> **OLUWATOSIN S. ORUNSOLU,** *et al*.   ) <br>        **Defendants**     ) <br>                          ) | **Case No. 22-03093-JWL** |

## REPORT IN "MARTINEZ vs. AARON" INVESTIGATION
## CIVIL RIGHTS COMPLAINT

This is an action brought by Damian Bateast, while confined at the El Dorado Correctional Facility (EDCF), El Dorado, Kansas. The plaintiff was transferred to the Lansing Correctional Facility (LCF), Lansing Kansas on October 17, 2022, and remains confined at LCF as of the date of this report. (Exhibit A). The plaintiff brings this action against EDCF defendants, Orunsolu Oluwatosin, Correction Counselor (CCII); Adam Knapp, Corrections Counselor I (CCI); Malty Martin, UTM; Dana Flores, Corrections Officer I (COI); COI Asbury Lathrom, COI Brandon Gaines; COI Orlando Perez; COI Coy Gannon; COI Eric Freeman and Centurion Health Nurse, Rochelle Graham. (Doc.6 pgs.1-3).

Additionally, the plaintiff named as defendants, Jane Doe, Nurse; John Doe, Corrections Officer; John Doe #2, Medical Provider and EDCF. (Id). Plaintiff's claims against EDCF were dismissed by the District Court. (Doc.8 pg.4).

## Plaintiff's Cause of Action – Three Counts

In Count I, the plaintiff claims his 8th amendment right was violated. Plaintiff alleges the EDCF unit team Defendants Orunsolu, Knapp and Martin failed to protect him from being assaulted on June 26,2020, while he was in protective custody. (Doc 6 pgs.6-9) Specifically, Plaintiff alleges Defendant Knapp, in a conversation with the Plaintiff's cellmate, Austin, encouraged Austin to attack the Plaintiff.

For count II, the plaintiff again alleges an 8th amendment violation, when he claims Defendants Flores, Lathrom, Gaines and Perez failed to protect him, from his roommate Mr. Austin. (Doc.6 pgs.10-12). Specifically, the Plaintiff claims a padlock was hidden in the mattress that Mr. Austin was allowed to bring from his cell when he and the plaintiff were moved to a new cell. (Id).

Then in Count III, the plaintiff alleges deliberate indifference under the 8th Amendment by EDCF Defendants Gannon and Freeman and Centurion Health Nurse Graham, along with a Jane and John Doe. (Doc. 6 pgs. 13-16). To support the deliberate indifference allegation the plaintiff claims COIs Gannon and Freeman began to rush the Plaintiff out of the hospital before he was discharged and with an IV still in his arm. (Id). Also, Plaintiff alleges

Defendant Graham failed to conduct an adequate examination of him after he was assaulted. (Id).

### Plaintiff's Requested Relief

The plaintiff seeks $25,000 in compensatory damages from each Defendant and another $25,000 in punitive damages from each of the Defendants. (Doc. 6-2 pg. 21) He also is seeking declaratory judgment and an injunction. For injunctive relief he seeks to be celled by himself until he can be transferred to a minimum custody facility. Plaintiff further alleges in his request for relief that he "is not safe, prison officials are retaliating through other inmates and contaminating plaintiff's food". (Id).

### Exhaustion Of Administrative Remedies

An investigation into this complaint shows that Plaintiff, Damian Bateast was confined at the El Dorado Correctional Facility at all relevant times of his complaint. However, on October 17, 2022, he was transferred to the Lansing Correctional Facility (LCF), where he presently resides, with an earliest possible release date of August 3, 2023. (Exhibit A).

A review of KDOC records does not show the plaintiff filed any personal injury claim under KAR 44-16-104a. It is apparent that the Plaintiff attempted to grieve at least some of the issues in this complaint concerning the June 26, 2020, incident. However, a review of the grievance indicates the Plaintiff failed to follow the grievance procedure and the grievance was return to EDCF, along with the following correspondence to the Plaintiff:

"I am writing to you in response to your grievance report form
that we received. KAR 44-15-102 requires an inmate to file a
formal grievance with the principal administrator of the facility
before appealing to the secretary. The content of your grievance
form reflects no evidence that you filed your grievance with the
facility principle administrator before pursuing an appeal with
the secretary. In accordance with K.A.R. 44 -15-102(c)4 we are
forwarding your grievance to the warden of the correction facility
where you are housed. If you have further questions regarding
this matter, we suggest that you contact your unit team." (Exhibit B).

This investigation does not reveal any further action taken by the Plaintiff on this grievance.

Prior to the previous noted grievance, the Plaintiff filed a grievance to the Secretary of
Corrections on June 23, 2020 – although before the complaint allegations – from which he
received a similar response on July 1, 2020, informing him that he was not following the
grievance procedure. (Exhibit C). Then on September 11, 2022, the Plaintiff filed a
grievance concerning his ongoing allegations of food contamination, which this time he
followed each step of the grievance process, resulting in a substantive response to his
grievance. (Exhibit D). In short, a review by Darcie Holthaus of Mr. Bateast's grievance
records does not show the Plaintiff exhausted his administrative remedies regarding the
issues brought in his complaint. (Exhibit E).

## Investigation Of Counts I, II, III

First, this investigation shows that three Defendants, Brandon Gaines, Coy Gannon
and Malty Martin had no involvement in any of the allegations brought against them related

---

to the June 26, 2020, incident.  Brandon Gaines was not employed at EDCF on June 26, 2020. (Exhibit F).

While Defendant, Coy Gannon did work at EDCF during the relevant period, he did not escort Mr. Bateast to the hospital on June 27, 2020, or any other day. (Exhibit G).

This investigation also shows Defendant Malty Martin had no, interaction with the Plaintiff on or around the June 26, 2020, incident because the Plaintiff resided in A-Cellhouse and Defendant Malty Martin was the UTM in C-Cellhouse. (Exhibit H).

This leaves Orunsolu and Knapp as defendants in Count 1 of the Plaintiff's complaint.  Defendant Orunsolu was a Corrections Counselor II (CCII) in A-Cellhouse and had interaction with the Plaintiff.  Defendant Orunsolu indicates that Mr. Bateast frequently requested to be single celled, however residents in the Restrictive Housing Unit (RHU) are doubled celled because there is not enough cells to provide every resident in RHU with their own separate cell. (Exhibit I).  Further, Defendant Orunsolu declared that during the short time that Resident Austin and Plaintiff Bateast were celled together, neither expressed any fear of rooming together.  (Id.)

Additional information is gathered from Defendant Knapp regarding the Plaintiff's allegations in Count I.  The Plaintiff and Resident Austin were first celled together on June 18, 2020, in A-2Cellhouse 211 (AA211) and were both moved to AA123 on June 25, 2020.  (Exhibit J).  Defendant Knapp indicated there was no information that would prevent Residents Austin and Bateast from being confined together and that neither one verbally or in writing stated a fear of the other. (Id.)

Defendant Knapp also addressed the Plaintiff's allegation that Knapp encouraged and condoned the attack on the Plaintiff by Resident Austin. (Id). According to the Plaintiff, Knapp told Austin that for him to be released from RHU "an event has to happen". (Id). Defendant Knapp response states:

> I have no clear memory of any conversation with Mr. Austin
> on June 26, 2020, although I do recall conversations in general
> with Mr. Austin about his desire to be released from RHU to
> released to general population. Most residents in the RHU
> want to be released to general population. Mr. Bateast was an
> exception in that he did not want to be in general population,
> but rather wanted to be single-celled or be placed in minimum
> custody. I categorically deny the statement Mr. Bateast contributes
> to me and such statement is without any basis in fact, since
> Mr. Austin's attack upon Mr. Bateast was not and did not result
> in Mr. Austin's released from RHU. In fact, Mr. Austin remained
> in RHU until released from KDOC custody on March 25, 2020. (Id).

So for Count I, this investigation reveals no evidence that the named Defendants in Count I had any notice or reason to think that Mr. Austin would attack the Plaintiff and there is no evidence that the Defendants encouraged or condoned the attack.

## COUNT II

In Count II, the Plaintiff alleges a padlock was hidden in Mr. Austin's mattress and that the padlock was used by Mr. Austin to attack the Plaintiff (Doc. 6, pgs. 10-12). However, a review of the Use of Force Report for the June 26, 2020, incident does not indicate any padlock was used by Mr. Austin. (Exhibit K). Also, Defendants' Flores, Lathrom and Perez have submitted Declarations declaring no knowledge of any padlock being concealed in Mr. Austin's mattress and used to attack the Plaintiff on June 26, 2020.

(Exhibits L, M, & N).

Defendant Perez witnessed the attack and he states in his declaration, referring to the June 26, 2020, incident:

> "At no time did I observe any padlock or any other type of weapon."
> (Exhibit N).

For Count II, a review if the Use of Force Report and Declaration by Defendants' Flores, Lathrom, and Perez, do not support the Plaintiff's failure to protect claim.

## COUNT III

The Plaintiff in Count III alleges his 8th Amendment right was violated by the deliberate indifference of the Defendants. (Doc. 6-2 pgs 13-16). A review of the Plaintiff's medical records from June 26, 2020, to July 2, 2020, do not reflect that the medical care and treatment provided to the Plaintiff can be characterized as "deliberate indifference' to his physical or mental health. (Exhibit O).

Specifically, the Plaintiff claims the medical examination he received after the June 26, 2020, incident was inadequate. However, a review of Plaintiff's medical records for June 26, 2020, do not substantiate that claim. (Exhibit O, pgs 1-33). Also, the Plaintiff's claim regarding his transport to the hospital on June 27, 2020, also are not substantiated. (Exhibit, pgs. 36-42). Lastly, the Plaintiff alleges he did not receive the medication that was prescribed by the doctor that saw him at the hospital; however, Plaintiff's medical records show the following;

> Additional Assessment Comments
> 2030 Patient transferred in from hospital, escorted by SST.
> Patient's left eye is swollen shut and purple. VS and assess-

ment are stable.  BP a little high r/t patient reports he did not take his blood pressure medication the AM.  Patient placed back in INF 117.
2120 SBA Nurse Olson, RN called VO for Dr. Tingey (Max-iofacial Surgeon) See "Plan" on this note.  Gave patient a 2nd pillow to elevate head / orders/ Gave patient verbal orders. He nodded "yes" indicating he understood.  This nurse called Dr. Harrod to substitute narcotic and steroid that we have here At prison.  Emphasis added.
2359 Patient resting in cell with light on and head elevated with pillows/orders.
~0300 Gave AM meds and first dose of 20mg Prednisone PO.
0500 Patient resting in bed elevated.  No s/s of distress.
0700 Patient report to be given to oncoming nurse as shift Change.  (Exhibit 0, pg. 36).

Also, the Plaintiff's medical records reveal he was actually having issues or at times actually refusing the pain medication Narco (hydrocodone).  (Exhibit 0 pgs. 47-48, and 66).

In conclusive, this investigation finds no evidence to substantiate the Plaintiff's allegations in Count I and II, that the Defendant's failed to protect him.  As for Count III, this investigation finds no evidence of deliberate indifference regarding the medical care and treatment the Plaintiff received after the June 26, 2020, incident.

Respectfully submitted,

Date: March 14, 2023

/s/ Robert E. Wasinger
Robert E. Wasinger, #15352
Legal Counsel
Department of Corrections
Ellsworth Correctional Facility
P.O. Box 107
Ellsworth, KS  67439
(785)877-6657
Limited Appearance for
"Martinez Report"

Damian Bateast v. Oluwatosin S. Orunsolu, et al.
Case No. 22-03093-JWL

MARTINEZ REPORT - Page 8

Robert E. Wasinger, #15352
Legal Counsel, Department of Corrections
Ellsworth Correctional Facility
P.O. Box 107
Ellsworth, Kansas 67439
(785)877-6657

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **DAMIAN BATEAST** #118348 | ) | |
| **Plaintiff** | ) | |
| vs. | ) | |
| | ) | **Case No. 22-03093-JWL** |
| **OLUWATOSIN S. ORUNSOLU,** *et al*. | ) | |
| **Defendants** | ) | |
| | ) | |
| ——————————————— | ) | |

## EXHIBIT LIST

KDOC EXHIBITS:

| Exhibit | Description |
|---|---|
| A | Kansas Adult Supervised Population Electronic (KASPER) |
| B | Grievance – 8/30/2020 |
| C | Grievance – 7/1/2020 |
| D. | Grievance – 11/10/2022 |
| E. | Declaration – Darcie Holthaus |
| F. | Declaration – Brandon Gaines |
| G. | Declaration – Coy Gannon |
| H. | Declaration – Malty Martin |
| I. | Declaration – Oluwatosin Orunsolu |
| J. | Declaration – Adam Knapp |
| K. | Use of Force Report – filed under seal |
| L. | Declaration – Dana Flores |
| M. | Declaration – Keith Lathrom |
| N. | Declaration – Orlando Perez |
| O. | Medical Records 6/26/2020 —7/2/2020 – filed under seal |

I, Robert E. Wasinger, certify that the attached are true and correct copies of records kept in normal course of business by the Kansas Department of Corrections and the published Kansas State Annotated; Kansas Administrative Regulation and Kanas Department of Corrections Internal Management Policy and Procedure.

Robert E. Wasinger, Legal Counsel
Ellsworth Correctional Facility

State of Kansas
County of Ellsworth

Subscribed and sworn before me on this 14th day of March, 2023.

Vickie L. Haun, Notary

My commission expires on September 20, 2026.

NOTARY PUBLIC - State of Kansas
VICKIE L. HAUN
My Appt. Expires 9/20/2026

Exhibit List, pg. 2