# Kansas Department of Corrections
## INTERNAL MANAGEMENT POLICY & PROCEDURE

Applicability: [X] Adult Operation Only  [ ] JUVENILE Operations Only  [ ] DEPARTMENT-WIDE

IMPP #: 11-106A  
PAGE #: 1 of 7  
DECISION MAKING: Facility Case Management  
Original Date Issued: 02-19-20   Replaces IMPP Issued: N/A   CURRENT EFFECTIVE DATE: 02-19-20

Approved By: _____, Secretary   Next Scheduled Review: February 2021

### POLICY

Unit Team Counselors must provide case management to all offenders, which includes developing a recidivism-reduction case plan, and managing custody and classification issues.

### DEFINITIONS

**Case Management:** The overall management of the case including addressing recidivism-reduction through a case plan with goals and addressing all custody and classification issues.

**Case Plan:** A set of goals and steps to address risk/need areas with an offender to reduce the risk of that offender recidivating in the future that includes using motivational interviewing, assessing motivation and readiness, and guiding the offender to participate in risk/recidivism-reduction programs and services with progress tracked and recorded.

**Case Review:** The process of the Unit Team Counselor reviewing the status of the case on various issues related to risk reduction, risk containment, custody and classification.

**Custody Classification:** A process to assess the level of danger an offender poses to correctional security or to the community in the event of authorized or unauthorized access to the public. Custody classification is conducted through the use of objective criteria established in the Inmate Custody Classification Manual.

**Program Management Committee:** Senior level staff at the facility chaired by the Warden or designee who makes decisions about custody, movement, and other critical security and risk containment issues.

### PROCEDURES

**I. Case Management**

A. Each offender admitted to the KDOC must participate at the Reception and Diagnostic Unit (RDU) in an assessment process per IMPP 11-102, assessing risk/needs using the Level of Services Inventory – Revised (LSI-R) per IMPP 11-113A, completing a PREA Assessment per IMPP 10-139D and otherwise identifying areas of risk and need. When this process is completed, RDU staff must prepare a recommended program plan per IMPP 11-107, with recommendations for programming to address risk/recidivism-reduction. Before transferring the offender from RDU, each offender must be assigned an incentive level per IMPP 11-101A, and a custody level per the Custody Classification Manual and process.

1. When a parole violator with no new sentence is admitted, an abbreviated process is to be used for admission, whether the offender is admitted at RDU or another facility.

B. When the offender is finished with the admission process, and sent to a correctional facility or living unit where s/he is to reside during incarceration, after any initial further assessment, review or orientation completed by the facility/unit is finished, within seven (7) days the offender must be assigned a Unit Team Counselor.

C. The assigned Unit Team Counselor must be responsible for case management with the offender, which must include developing a risk/recidivism-reduction case plan, updating custody and classification, and conducting periodic case reviews. The risk/recidivism-reduction work must be coordinated with custody and classification, and the case review must be used to address all aspects of the case.

**II. Case Planning**

A. When a Unit Team Counselor is assigned a case, that Counselor must review the electronic master file, risk/need profile of the offender, recommendations from RDU, and in consideration of the offender's time to serve, status as a known aggressor or known victim per the screening at admission under IMPP 10-139D related to sexual abusiveness and victimization, risk or recidivating (LSI-R risk level), areas of risk/need per the LSI-R and RDU, custody, classification, level of motivation and ability, develop a recidivism-reduction case plan for all moderate (19-31 on LSI-R) and high (32+) risk offenders. The case plan is opened, and work is to begin on the case plan within 30 days of the case assignment. (The 120-day review process must suffice for low risk offenders, remembering that the focus is on reinforcing pro-social and sustained employment.)

1. The RDU LSI-R score must be used to develop the case plan. Except, if the offender did not receive an LSI-R at the most recent admission, due to the length of his/her current incarceration, the Unit Team Counselor must rely upon the most recent LSI-R available. If no LSI-R has ever been completed on the offender, an LSI-R must be completed by a certified assessor.

2. The program plan must be used as recommendations, but in the course of case planning, different programs may be accessed for advancing the case plan when appropriate.

3. When establishing case plans, the criteria for placement in offender programs per IMPPs 10-101A, 10-102D, 10-104D, 10-108 and 10-109A may provide guidance. However, ultimately referrals to programs and services to advance recidivism-reduction plans must be based upon the offender's current risk/need.

4. Based on the case plan, the Unit Team Counselor must make referrals to programs and services as needed, working with program providers to get the offender enrolled; helping to keep the offender motivated and engaged; and addressing progress or issues that arise during the course of the program or service. When making program referrals, the offender's status as a known aggressor or known victim per the screening at admission under IMPP 10-139D must be considered.

5. The case plan must be prepared using the electronic Case Plan in TOADS.

    a. When the Unit Team Counselor meets with the offender to work on the plan, progress notes must be made in the plan reflecting updates.

    b. If an offender is transferred from one Unit Team Counselor to another, the sending Unit Team Counselor must make an entry in the case plan indicating the status of progress on the case plan, including status in any programs; and, the receiving Unit Team Counselor must continue the work on the case plan, making any modifications deemed appropriate.

    c. When the offender reaches the point where reentry planning begins per IMPP 11-117, as part of preparing the reentry plan, progress made during case planning must be summarized in the reentry plan. The case plan ends, and the reentry plan begins.

        (1) The Unit Team Counselor must meet with the offender at appropriate intervals to advance the case plan. The 120-day case review discussed in

Section III. below provides an opportunity to check progress and ensure that the case plan is moving forward.

(a) If the offender has five (5) years four (4) months or more to serve, and/or is low risk/need, and the case plan does not need to progress as quickly, the case plan updates must occur less frequently than every 120 days.

(b) If the offender has less than five (5) years four (4) months to serve, and/or is higher risk/need, progress on the plan needs to occur more quickly, and review of the case plan must occur at least every 120 days, and more often if needed to ensure the plan is completed before release.

B. Awarding and withholding good time credits must be in accordance with K.A.R. 44-6-115a.

1. The "assigned programs" for purposes of K.A.R. 44-6-115a(e) must be:

    a. Sex offender program (SOP), unless the provider has determined the offender is low risk enough to not require SOP or to get SOP in the community, or unless the offender lacks sufficient time at admission to serve to complete SOP in prison.

    b. Any program the Unit Team Counselor has included in the case plan.

2. Any other program the offender enrolls in must be voluntary and must not be considered an "assigned program" for purposes of K.A.R. 44-6-115a(e).

**III. Case Review, Custody & Classification**

A. Each case must have a regularly scheduled case review, which must occur:

1. Every 120 days for offenders with less than five (5) years four (4) months to serve.

2. Annually for offenders with five (5) years four (4) months or more to serve.

B. After the initial custody classification at admission, each offender's case must be reviewed for custody at the offender's regularly scheduled case review, for all custodies except minimum, which must be event driven.

1. It is in the Warden's discretion whether to make any classification decision (custody, housing, visitation, etc.) part of the case review process, or to make other arrangements for custody review of all cases.

2. Custody reviews must occur outside of regularly scheduled reviews at any other time when the circumstances warrant, including:

    a. readmission as a violator,
    b. pending disciplinary report,
    c. conviction of a disciplinary infraction,
    d. STG validation,
    e. MDT Assessment,
    f. notice of ICE status in question,
    g. unsuccessful termination from any program,
    h. identification of a detainer,
    i. receipt of a new journal entry,
    j. incentive level change (up or down),
    k. change in mental health level or diagnosis or special management status,
    l. transfer to a new living unit/facility, or
    m. for any other reason the facility deems appropriate.

Within 72 hours after receiving a custody classification decision, the offender may appeal the decision to the Warden by submitting the appeal through the Unit Team Counselor on a Form-9.

a. If the Warden did not participate in the custody classification decision, the Warden must review the decision and the offender's written appeal and return a written response to the offender within 15 working days of receipt.

b. If the Warden was a participant in the custody classification decision, the offender's appeal must be forwarded to the Deputy Secretary of Facilities Management or designee for review, who must return a written response to the offender within 15 working days of receipt.

c. The decision of the Warden or Deputy Secretary or designee is final.

C. At the case review described in Section III.A. above, in addition to addressing custody, the Unit Team Counselor must address:

1. Ensuring job and program assignments are made consistent with IMPP 10-139D, related to sexual victimization and abusiveness.

    a. When an offender has been identified as a known aggressor or known victim per the screening for sexual abuse and victimization pursuant to IMPP 10-139D, the Counselor must take that into consideration in making and reviewing housing, job and program assignments.

        (1) A chronological entry must be made in TOADS at the time of the case review, which specifically reflects that known aggressor or known victim status was considered when such occurs and impacts housing, job or program placement.

2. Good time award. Annual good time awards must be submitted as three (3) separate 120-day awards, which may be completed on an annual schedule.

3. Updates to emergency notification, disposition of deceased body, telephone list and visiting list.

4. Any changes in central monitoring are necessary and submit such changes per IMPP 12-125D.

5. The offender's privileges/incentives level for accuracy.

6. Detainers, including any known pending, and including asking the offender about any that may have been overlooked and following up on new information.

7. The offender's sentence summary, and if the offender raises an issue, or there is an apparent question or discrepancy, that must be reported to the Classification Administrator.

Page 2 of 7, IMPP 11-106A
Effective 02-19-20

Page 3 of 7, IMPP 11-106A
Effective 02-19-20

Page 4 of 7, IMPP 11-106A
Effective 02-19-20


Exhibit PGC 20