EXHIBIT V
PAGE 1 OF 4

# KANSAS DEPARTMENT OF CORRECTIONS
## ADMINISTRATIVE SEGREGATION REVIEW

| ☐ INITIAL | ☐ WEEKLY | ☒ MONTHLY | ☐ 180 DAY | ☐ YEARLY | ☐ BMU |
|---|---|---|---|---|---|
| Name: | Bateast, Damian | DOC# | 118348 | Date: 5/22/2020 | |
| Date of placement: | 7/5/19 | Location: | EDCF-C | Current Cell Location: | A2-141 |
| IMPP Segregation Status: | IMPP 20-104 IB (1) PC | | | Inmate Appeared? Yes ☐ No ☒ | |

### SEGREGATION PLACEMENT/RETENTION FACTS:

| Date | Facts | Source | Location |
|---|---|---|---|
| 7/5/19 | Facts: On Friday July 5th at approximately 0948 offender Bateast, Damian #118348 returned to C2 after placement in BCH. The offender entered the unit team office and stated that he wasn't staying in C2 with the offender that jumped him. When asked what offender jumped he stated that he has full intentions of jumping him prior to the offender jumping on him. The offender was offered a PC waiver at that point which he refused to sign which initiated his placement into protective custody. This placement is for the safe and secure operation of the El Dorado correctional facility. | Adsegrep | File |
| 7/5/2019 | Convicted of disobeying orders | OMIS | File |
| 10/11/19 | Convicted of undue familiarity | OMIS | File |
| 12/4/2019 | Convicted of dangerous contraband -razor blade | OMIS | File |
| 1/31/2020 | Offender is an IRU offender, refusing to live in EDCF IRU GP. | OMIS | File |
| 2/24/2020 | Convicted of violation of published orders-class 1 | OMIS | File |
| 2/25/2020 | Convicted of violation of published orders-class 2 | OMIS | File |
| 3/20/2020 | Convicted of Theft | OMIS | File |
| 5/22/2020 | Convicted of fighting | OMIS | File |

### SUMMARY OF CURRENT BEHAVIOR:

| Date | Summary | Location |
|---|---|---|
| 1/3/2020 | Offender chose not to attend RHRB | EDCF A |
| 1/31/2020 | Offender chose not to attend RHRB | EDCF A |
| 2/26/2020 | Offender chose not to attend RHRB | EDCF A |
| 3/20/2020 | Offender chose not to attend RHRB | EDCF A |
| 4/24/2019 | Offender chose not to attend RHRB | EDCF A |
| 5/22/2020 | Offender chose not to attend RHRB | EDCF A |

### INMATE'S COMMENTS: None.

| Return to General Population? | Transfer to other facility? | Programs recommended? | Change in status? |
|---|---|---|---|
| Yes ☐ No ☒ | Yes ☐ No ☒ | Yes ☐ No ☒ | Yes ☐ No ☒ |

**REASONS FOR RECOMMENDATIONS:** Placement facts remain. Offender should return to IRU, but he refuses to do so. He does not want to live in general population. He does not participate in RHRB.

| BHP Reed | CSII McWithey | UTM Martin |
|---|---|---|
| Clinical Staff (Retain ☒ Release ☐) | Security Staff (Retain ☒ Release ☐) | Classification Staff (Retain ☒ Release ☐) |
| Comments: Placement facts | Comments: Placement facts | Comments: Placement facts |

### PMC REVIEW/SIGNATURES

| PMC Member (Retain ☒ Release ☐) | PMC Member (Retain ☒ Release ☐) | PMC Member (Retain ☒ Release ☐) |
|---|---|---|
| Comments: PC IRU offender | Comments: Continue on PC status | Comments: Continue on PC status. |

### DEPUTY SECRETARY REVIEW

Deputy Secretary, Facility Management    Retain ☐    Release ☐    Date_____
Date_____

Copy Received by inmate;

exhibit PGE 2 of 6

**PROCEDURES**

I. **Standard Issue of Clothing Items**

    A. Resident standard issue clothing is to be provided as listed in Attachment A (adult) or Attachment B (juvenile) of this policy.

II. **Weather Protective Clothing**

    A. Adequate weather protective clothing, suitable to climatic conditions and work assignments, is to be made available to all residents.

        1. Weather protective clothing may be provided in any of the following manners:

            a. Issued as a part of the standard resident clothing issue pursuant to Section I.A. above, with the resident retaining the clothing throughout the period of confinement at the issuing facility;

            b. Issued as special resident clothing pursuant to Section III.B. below, with the resident retaining the clothing for the duration of the special job assignment; or,

            c. Issued for temporary situational use by the resident during the period of inclement weather.

        2. The manner of distribution of weather protective clothing is to be determined by the Warden/Superintendent, consistent with the facility's physical plant and the nature of movement and activities at the facility that expose offenders to the weather elements.

III. **Special Issue Clothing Items**

    A. Special Clothing for Resident Work Details

        1. Residents assigned to food service or clinical/administrative porter jobs are to be issued:

            a. <u>**JUVENILE:**</u> A white or gray jumpsuit;

            b. <u>**ADULT:**</u> A white short-sleeve, button front shirt/blouse with breast pocket and white trousers; or,

            c. A white apron to be worn with a T-shirt and blue jeans.

        2. <u>**ADULT:**</u> Residents assigned to outdoor job assignments are to be issued either predominantly red or clear weather protective outer clothing and a red ball cap/stocking cap in addition to the standard clothing

            a. Headgear is to be required wear for all residents assigned to outdoor job assignments.

                (1) Headgear may be issued to other residents at the discretion of the Warden/Superintendent.

            b. Except as indicated below, red insulated coveralls may be issued to residents as dictated by weather conditions.

                (1) Any coveralls issued to residents housed at the Topeka Correctional Facility (TCF) are to be either tan or brown in color.

        3. Protective footwear may be provided when determined necessary in certain job assignments.

      a.    Slip resistant soles are to be provided to residents working in food service.

B.    Restrictive Housing Clothing

    1.    Except for those residents classified as being in restrictive housing for orientation purposes, residents in restrictive housing are to be attired in a distinctively colored uniform that sets them apart from other members of the resident population.

C.    Transportation/In-transit Clothing

    1.    All residents being transported by KDOC personnel as a part of an inter-facility transfer are to be dressed in orange attire.

    2.    An orange uniform may be utilized for any transportation/escort situation at the discretion of the facility Warden/Superintendent.

    3.    **ADULT:** The orange uniform is not to be utilized for any purpose other than transportation/in-transit attire.

D.    Clothing Ordered by Health Care Practitioner

    1.    Special issue clothing items may be ordered as medically necessary by the Health Care Practitioner.

    2.    The Health Services Administrator is to notify the facility of medically necessary clothing items.

E.    **ADULT:** Residents participating in work release programs, per IMPP 15-101A, are not to be issued clothing but are to be permitted to wear personal clothing as specified by General Orders. (K.A.R. 44-8-107)

    1.    This is not to preclude the issue of suitable "civilian" clothing to be worn until personal clothing can be obtained.

IV.    **Clothing Issue Procedures and Quantities**

A.    Each Warden/Superintendent is to ensure that the annual budget request for resident clothing is in accordance with issued budget preparation instructions.

B.    There is to be an accurate record established and maintained which reflects the description and quantity of clothing issued to each individual resident.

C.    Upon inter-facility transfer or authorized release, all state-issued resident clothing is to be returned to the point of issue and quantities returned are to be checked against issue records.

    1.    Facilities are to return the tennis shoes or "croc" style plastic shoes worn by residents transferred from TCF-RDU or EDCF-RDU to the clothing issue office of the sending facility when the resident is received.

V.    **Maintenance, Care and Wearing of Clothing**

A.    All clothing is to be issued to fit properly and is to be clean and in good repair when issued.

B.    Trousers are to be worn fully fastened and zipped, and trouser legs are to be hemmed.

C.    Shirts are to be buttoned except for the collar button.

D.    Except as otherwise specified below, all shirts are to be worn tucked into the trousers.

      1. Residents may wear their shirts untucked when present within their living unit or while engaged in approved recreational activity.

E. While residents are on work assignments or participating in programs of vocational education, academic education, or treatment-type programs, only standard issued clothing is to be worn (see Sections I.A. above), except that:

      1. Personal tennis shoes and/or boots may be worn unless the wearing of such footwear presents a safety hazard. Each Warden/Superintendent is to determine the situations that involve a safety hazard.

      2. **ADULT:** Personal clothing may be worn on job assignments established under the provisions of IMPP 10-125 or any other job assignment authorized by the Secretary of Corrections, provided that the wearing of such clothing is mutually agreed to by the Warden and designee of the agency/organization for which the labor is provided.

          a. In those situations where the wearing of personal clothing is preferred, but the resident is not permitted to possess personal clothing per IMPP 12-120A, the Warden is to have the discretion to accommodate the situation and implement a mutually agreeable alternative with the agency/organization involved.

F. **ADULT:** During warm weather months, red ball caps are to be worn by all minimum custody residents working outside the secured perimeter. During cold weather months, only red stocking caps may be substituted for the red ball cap.

      1. The cap brim is to be worn face forward, and is to be bent neither upward or downward.

      2. Caps are to bear no writing or facility designation.

      3. Ball caps or stocking caps are not to be worn inside, except as required for safety purposes as determined by the Warden.

G. Footwear is to be worn fully on the foot, fully laced and fastened.

      1. **ADULT:** Footwear is to be polished and kept in good repair at all times.

H. Belts are to be worn properly at all times.

I. Items of clothing that would otherwise be permitted but, when worn, are considered immodest or provocative are not to be allowed.

      1. The Warden/Superintendent or their designee is to be responsible for determining the appropriateness or inappropriateness of any item of clothing. The decision is to be final.

J. Residents are not to be permitted to alter any article of clothing in any fashion.

      1. Trousers are not to be tucked, rolled, pleated or bloused.

K. Unless personal clothing is permitted at the facility, standard resident clothing (per Section I. above) is only to be worn during visitation and during escorted trips from the facility.

      1. The wearing of recreational issue clothing during these times is prohibited.

      2. The exception is to be rain gear, which is permitted for use as necessary to move from building to building within the facility, or to the destined location outside the facility, if the weather requires.

          a. Rain gear is to be permitted for use on such occasions whether issued as special

        resident clothing or temporary issuance, pursuant to Section III.A. above.

    L.    Any staff observing residents in ill fitting, torn, or otherwise unsuitable clothing are to make a report to the resident's assigned Corrections Counselor. The Corrections Counselor is to take such action as is necessary to resolve the problem.

VI. **Bedding and Linen Supplies**

    A.    Residents are to be issued usable, suitable, clean bedding and linen, including three bath towels, two hand towels, three wash clothes, two (2) sheets, one pillow and one pillowcase, one mattress, and two blankets/bedspreads.

    B.    At least weekly, blankets, sheets, and pillowcase are to be exchanged for a clean issue of the same.

        1.    Towels and washcloths are to be exchanged and/or cleaned at least three (3) times per week.

VII. **Personal Hygiene and Bathing Standards**

    A.    Wardens/Superintendents are to establish general orders whereby all residents, including those in restrictive housing, are to be permitted to shower and shave no less than three (3) times weekly.

        1.    Showering for individual residents in restrictive housing may be less than three (3) times per week if valid security risks exist, as determined by the Warden/Superintendent.

        2.    If the number of permitted showers is reduced, such is to be documented with justification in writing.

    B.    When possible, bathing/showering is permitted and encouraged daily and following strenuous exercise.

    C.    All residents are to keep themselves, including their clothes, neat and clean as conditions permit.

VIII. **Resident Hair Standards**

    A.    Resident hair standards are to be in accordance with K.A.R. 44-12-106 (adult) or K.A.R. 123-12-106 (juvenile).

        1.    **ADULT:** Residents with mustaches, assigned to food service, are not to be required to wear facial masks unless mandated for all residents/workers.

    B.    Residents assigned to industrial or other work assignments are to maintain their hair in a manner which will not create a safety hazard, in accordance with Occupational Safety and Health Agency (OSHA) requirements.

    C.    Hair care services that are culturally appropriate and comply with applicable regulatory requirements are to be available to all residents.

        1.    Work release residents may be required to pay for and obtain hair care services in the community.

**NOTE:** The policy and procedures set forth herein are intended to establish directives and guidelines for staff, residents, and offenders and those entities that are contractually bound to adhere to them. They are not intended to establish State created liberty interests for employees, residents, or offenders, or an independent duty owed by the Department of Corrections to employees, residents, offenders, or third parties. Similarly, those references to the standards of various accrediting entities as may be contained within this document are included solely to manifest the commonality of purpose and direction as shared by the content of the document and the content of the referenced standards. Any such references within this document neither imply accredited status by a