**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **DAMIAN M. BATEAST,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case. No. 22-3093-DDC-ADM |
| | ) |
| **OLUWATOSIN S. ORUNSOLU,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**MEMORANDUM IN SUPPORT OF THE KDOC DEFENDANTS'
MOTION TO DISMISS**

Defendants Dana Flores, Eric Freeman, Adam Knapp, A. Keith Lathrom, Jr., Malty Martin, Oluwatosin Orunsolu, and Orlando Perez (the "KDOC Defendants"), submit this memorandum, through Assistant Attorney General Matthew L. Shoger, in support of their motion under Fed. R. Civ. P. 12(b)(1) and (b)(6). the KDOC Defendants respectfully request that this motion be granted and this action be dismissed. The KDOC Defendants attach one new exhibit – Exhibit A, an updated KASPER information sheet – and state the following in support.

**NATURE OF THE CASE**

Plaintiff Damian M. Bateast alleges that on June 26, 2020 – while incarcerated under the Kansas Department of Corrections (KDOC) at El Dorado Correctional Facility (EDCF) – the KDOC Defendants violated his Eighth Amendment rights by being deliberately indifferent to a risk of physical attack against him and to serious medical needs resulting from the attack.

Bateast filed this lawsuit under 42 U.S.C. § 1983 on May 9, 2022 (Doc. 1), and he filed an Amended Complaint ("Complaint") on July 5, 2022 (Docs. 6, 6-2). He seeks monetary damages in the form of compensatory and punitive damages, a declaratory judgment, and an injunction to "self-cell" him unless he is transferred to minimum security. (Doc. 6-2 at 21.)

The Court dismissed EDCF from the case on September 6, 2022 (Doc. 8 at 4, 6), and dismissed Brandon Gaines on June 22, 2023 (Doc. 35-1 at 2). Defendants Mason Gaines, Alexander Gannon, Rochelle Graham, Jane Doe, John Doe, and John Doe #2 have not yet been served in this case. The undersigned counsel entered an appearance for Coy Gannon (Doc. 16), but Coy Gannon was effectively terminated from the case and replaced with *Alexander* Gannon, who has not waived service or been served. (*See* Doc. 35-1 at 2.) The KDOC Defendants have provided the Court with the last known addresses of Mason Gaines and Alexander Gannon "under seal for the sole purpose of effecting service of process upon them." (Docs. 46, 42.)

As of September 15, 2023, Bateast is no longer incarcerated. (Exhibit A at 1-2.)[1]

The KDOC Defendants now bring this Motion to Dismiss. (*See* Doc. 51 (setting deadline).) They are entitled to dismissal of Bateast's Complaint for lack of subject matter jurisdiction (due to Eleventh Amendment immunity and mootness) and for failure to state a claim in light of qualified immunity.

## QUESTIONS PRESENTED

I. Does the Eleventh Amendment bar Bateast's § 1983 claims against the KDOC Defendants in their official capacities for monetary and declaratory relief?

II. Is Bateast's request for an injunction moot when Bateast is no longer incarcerated?

III. Are the KDOC Defendants entitled to qualified immunity on the deliberate indifference claims because their actions as alleged did not violate clearly established law of which reasonable state officials would have known?

---

[1] The Court can take judicial notice of Exhibit A – which can be found on KDOC's website – under Federal Rule of Evidence 201. *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007); *see also* KDOC, Locating a resident (last modified May 25, 2023), https://www.doc.ks.gov/facilities/faq/locating.

IV.     Does Bateast's complaint fail to state a plausible First Amendment retaliation claim when it lacks specific facts supporting "but for" causation?

## ARGUMENTS AND AUTHORITIES

### *Standard on Motion to Dismiss for Lack of Subject-Matter Jurisdiction*

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss claims for lack of subject-matter jurisdiction. McCoy, as the party invoking the Court's jurisdiction, bears the burden of showing its existence. *Kline v. Biles*, 861 F.3d 1177, 1180 (10th Cir. 2017) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 906 F.3d 926, 931 (10th Cir. 2018).

### *Standard on Motion to Dismiss for Failure to State a Claim*

On a Rule 12(b)(6) motion to dismiss, a court must accept as true all well-pleaded factual allegations in the complaint, *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009), but a complaint must also contain enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Although the sufficiency of a complaint generally rests on its contents alone, the court may also consider: (1) documents that the complaint incorporates by reference, (2) documents that the complaint references if they are central to the plaintiff's claims, and (3) documents of which a court may take judicial notice, which includes court records in any related court proceedings. *Gee v. Pacheco*, 627 F.3d 1178, 1186, 1191 (10th Cir. 2010). At the motion to dismiss stage, these "may only be considered to show their contents, not to prove the truth of matters asserted therein." *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

Although courts have traditionally construed *pro se* pleadings in a liberal fashion, this

3

"does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996). Similarly, courts do not assume the role of an advocate for the *pro se* litigant by constructing arguments or searching the record for potentially viable theories. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). And a *pro se* litigant is expected to adhere to the same rules of procedure that govern any other litigant in this circuit. *Id.*

*Qualified Immunity Standard*

Qualified immunity protects from civil liability government officials whose actions do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). When a defendant raises the qualified immunity defense, it creates a presumption that the defendant is immune from suit. *Janny v. Gamez*, 8 F.4th 883, 913 (10th Cir. 2021). To overcome this presumption, the burden shifts to the plaintiff to show (1) the defendant's alleged conduct violated a federal statutory or constitutional right, and (2) that right was clearly established at the time of the alleged violation. *Id.* "The court has discretion to decide which of the two prongs of the qualified-immunity analysis to address first." *Grissom v. Roberts*, 902 F.3d 1162, 1167 (10th Cir. 2018) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). The clearly-established right must be clear from applicable case law, *Colbruno v. Kessler*, 928 F.3d 1155, 1161 (10th Cir. 2019), and must be defined with specificity, *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019).

### I. **The Eleventh Amendment bars Bateast's claims against the KDOC Defendants in their official capacities for monetary damages and declaratory relief.**

"The Eleventh Amendment bars suits in federal court against a nonconsenting state brought by the state's own citizens." *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1212 (10th Cir. 2019) (citing *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974)). State officials such as

4

KDOC employees share the state's immunity from suits against them in their official capacities. *See id.; White v. Colorado*, 82 F.3d 364, 366 (10th Cir. 1996). A narrow exception allows a plaintiff to seek prospective injunctive relief against a state official for ongoing violations of federal law. *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012) (citing *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002)). But claims for "retrospective declaratory relief" are barred. *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1232 (10th Cir. 2004). "Once effectively asserted, Eleventh Amendment immunity constitutes a bar to the exercise of federal subject matter jurisdiction." *Williams*, 928 F.3d at 1212.

Here, Bateast requests prospective injunctive relief against the KDOC Defendants, and this particular remedy is exempt from Eleventh Amendment immunity. (Doc. 6-2 at 21.) But Bateast also requests monetary damages in the form of compensatory and punitive damages (Doc. 6-2 at 21), which are barred by the Eleventh Amendment as asserted against the KDOC Defendants in their official capacities. Bateast further requests a declaratory judgment stating that the KDOC Defendants violated his constitutional rights. (Doc. 6-2 at 21.) To the extent such a declaratory judgment stands as an independent remedy apart from Bateast's requested injunctive relief, it is barred. Therefore, Bateast's claims against the KDOC Defendants in their official capacities for monetary damages and for declaratory relief should be dismissed for lack of subject-matter jurisdiction due to Eleventh Amendment immunity.

## II.     Bateast's request for injunctive relief is moot because he is no longer incarcerated.

"Article III delimits the jurisdiction of federal courts, allowing [them] to consider only actual cases or controversies." *Kan. Jud. Rev. v. Stout,* 562 F.3d 1240, 1245 (10th Cir. 2009). "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Off. Eng. v. Arizona,* 520 U.S. 43, 67 (1997).

In deciding whether a case is moot, the crucial question is whether granting a

present determination of the issues offered will have some effect in the real world.
When it becomes impossible for a court to grant effective relief, a live
controversy ceases to exist, and the case becomes moot.

*Kan. Jud. Rev.,* 562 F.3d at 1246 (citation omitted). "The touchstone of the mootness inquiry is whether the controversy continues to touch the legal relations of parties having adverse legal interests in the outcome of the case." *Wirsching v. Colorado*, 360 F.3d 1191, 1196 (10th Cir. 2004) (quoting *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir. 1994), *superseded on other grounds as recognized in Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1278 (10th Cir. 2001)). "[T]his legal interest must be more than simply the satisfaction of a declaration that a person was wronged." *Id.* Further, "a plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured by the defendant in the future." *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1224 (10th Cir. 2009).

Here, Bateast is no longer incarcerated. (Exhibit A at 1-2.) Therefore, he cannot "demonstrate a good chance of being likewise injured by the defendant[s] in the future." *Corder*, 566 F.3d at 1224; *see also Jordan v. Sosa,* 654 F.3d 1012, 1028 n.17 (10th Cir. 2011) (stating "where a prisoner is no longer housed at the penal institution having the conditions of confinement that form the basis of his suit, declaratory relief—as well as injunctive relief—is ordinarily not available"). Accordingly, the request for injunctive relief is moot and should be dismissed for lack of subject-matter jurisdiction.

## III. The Court should not accept as true Bateast's speculative conclusions regarding alleged comments.

For a motion to dismiss, the Court accepts as true well-pleaded facts alleged in the Complaint, but does not accept as true implausible, conclusory, or speculative allegations. *See Jimenez ex rel. Soto v. Bd. of Cnty. Comm'rs*, 748 F. App'x 790, 793 (10th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "Where a complaint pleads facts that are merely

6

consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679.

Bateast alleges that Knapp told his cellmate Austin that for Austin to be released from administrative segregation, "an event . . . has to happen." (Doc. 6-2 at 12.) Bateast speculates that this broad, generic phrase was Knapp encouraging Austin to commit violence toward Bateast. Although Bateast's interpretation is technically "possible," it is highly speculative, so it falls short of giving rise to a plausible entitlement for relief. So the Court should not accept as true that Knapp was encouraging violence toward Bateast through his alleged words to Austin.

Bateast alleges that his cellmate Austin whispered something to Flores that he could not hear. (Doc. 6-2 at 14.) Bateast speculates that this means Austin must have conspired with Flores to smuggle a contraband weapon to attack Bateast with, but the Court should not accept that highly speculative conclusion as true.

Bateast alleges that Flores said to him, "No one will believe your story." (Doc. 6-2 at 15.) On its face, this alleged statement means that Flores was not concerned that others would find Bateast's story believable. (As the Court is well aware, allegations by inmates sometimes strain credulity.) Bateast goes well beyond the plain meaning of Flores' alleged words and speculates, saying, "Her comment to me was a confession of her guilt and admittance of her participation." Although Bateast's interpretation is technically "possible," it is highly speculative and goes well beyond Flores' alleged words, so it falls short of giving rise to a plausible entitlement for relief. Therefore, the Court need not accept as true that Flores supposedly confessed guilt or to participating in violence toward Bateast.

> Bateast also recounts an alleged conversation with Perez:
>
> Perez held a conversation with me while being escorted to the cellhouse. He stated that it wasn't Austin's first time doing that to someone. He stated that everyone knew what was coming, referring to inmates and prison officials. I was the only one unaware. He also stated that they watche[d] for a while when I was being beat[en] before intervening. His comments show that he and other prison officials knew I was in danger and disregarded that risk to Plaintiff's health and safety.

(Doc. 6-2 at 16.) Here, first, as an initial matter, Perez's alleged words are hearsay, at least as applied to defendants other than Perez. *See Lilly v. Virginia*, 527 U.S. 116, 128 (1999).

Second, Bateast reads into Perez's alleged words more than is plausibly there. Bateast's actual allegations regarding the conversation fail to address *who* saw *what* coming *when*. Perez's alleged words could quite naturally mean that in the seconds before the attack, those present (including Gaines and Perez) realized that Austin was going to attack Bateast, and it took them a few seconds to process what to do and to react. Bateast goes well beyond this and appears to speculate a conspiracy by *literally* everyone who knew for an *extended period of time* that Austin was going to attack Bateast, and the guards *purposely* let the attack go on for longer than would have happened had they reacted right away. The Court should not accept these speculative additions as true.

Third, interpreted in light of Bateast's own account of the attack in his administrative grievance, any delay by the guards before intervening must have been extremely short because Bateast himself said: "It happened so fast that when I realized what was going on the C.O.'s had sprayed mace." (Doc. 22-1 at 16.)[2] So the statement by Perez that the guards "watched for a

---

[2] The Court can take judicial notice of this grievance as a document the Complaint references that is central to the claims. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). It is central to the claims because Bateast must exhaust administrative remedies before bringing these claims. *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("unexhausted claims cannot be brought in court").

while when [Bateast] was being beat[en]," interpreted in light of Bateast's own account, could not have been referring to a substantial delay before intervening. Rather, if anything, it means it took a few seconds for the guards to react to the surprise attack. Therefore, the Court should not accept as true that Perez's comments "show that he and other prison officials knew [Bateast] was in danger and disregarded that risk to Plaintiff's health and safety." (*See* Doc. 6-2 at 16.)

IV. **The KDOC Defendants are entitled to dismissal of Bateast's Eighth Amendment claims for failure to state a claim because qualified immunity applies when the alleged conduct did not violate clearly established law.**

The KDOC Defendants are entitled to qualified immunity because there was no clearly established law within this Circuit, or a robust consensus of cases outside of it, that their alleged actions violated clearly established law, particularized to the facts of this case. Specifically, Bateast has not shown any law that put the defendants on notice that double-celling protective custody (PC) and other security risk (OSR)[3] inmates together was a per se violation of the Constitution, that a PC waiver could not be constitutionally offered to an inmate at the inmate's cell, that moving a mattress to a new cell violates the Constitution, that being present when a surprise attack occurs violates the Constitution, or that removing an inmate from a hospital earlier than the hospital staff would prefer or leaving an IV in violates the Constitution. Because qualified immunity applies, the Court should dismiss Bateast's § 1983 claims against the KDOC Defendants in their individual capacities for failure to state a claim.

Deliberate indifference is the general standard both for "failure to protect" claims, *Requena v. Roberts*, 893 F.3d 1195, 1214 (10th Cir. 2018), and "serious medical needs" claims, *Estate of Beauford v. Mesa Cnty.*, 35 F.4th 1248, 1262 (10th Cir. 2022). Deliberate indifference

---

[3] *See* KDOC, Acronyms and Specialized Terms, https://www.doc.ks.gov/publications/KDOCAcronyms02.04.22.pdf.

has both an objective component and a subjective component. *Beauford*, 35 F.4th at 1262 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). For the objective component for "failure to protect" claims, the "plaintiff must show 'that the conditions of his incarceration present an objective substantial risk of serious harm.'" *Bellamy v. McCollough*, No. 20-3229-DDC, 2022 WL 612447, at *5 (D. Kan. Mar. 1, 2022) (quoting *Requena*, 893 F.3d at 1214). "Often, courts have found this objective prong met 'where prison officials disregard repeated warnings of danger to a particular prisoner and continually refuse to make the situation safer.'" *Id.* (quoting *Grimsley v. MacKay*, 93 F.3d 676, 681 (10th Cir. 1996)).

For the objective component for "serious medical needs" claims, the plaintiff must show that the prisoner's medical need was "sufficiently serious." *Beauford*, 35 F.4th at 1262. (citing *Farmer*, 511 U.S. at 834). "A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* A showing of substantial harm – which may be satisfied by showing "lifelong handicap, permanent loss, or considerable pain" – also meets the objective component. *Id.* If the allegation is a delay in medical care, then the plaintiff *must* show the delay resulted in "substantial harm." *Id.* at 1268.

The *subjective* component for both types of claims requires showing that the prison official had a culpable state of mind. *Id.* at 1262 (citing *Farmer*, 511 U.S. at 834). This is only met if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Even if both the objective and subjective prongs are met, "a constitutionally legitimate justification" may still be shown. *Arocho v. Nafziger*, 367 F. App'x 942, 952 (10th Cir. 2010).

10

This should be determined, not with the benefit of hindsight, but based on what the official reasonably knew at the time. *See Strain v. Regalado*, 977 F.3d 984, 996 (10th Cir. 2020) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)) (saying in the context of the deliberate-indifference standard that "courts do not judge the constitutionality of particular actions 'with the 20/20 vision of hindsight'"). Prison officials have a "legitimate penological interest of maintaining control and discipline in the prison facility." *Evans v. Cawthorn*, No. 16-3095-DDC, 2019 WL 5787952, at *8 (D. Kan. Nov. 6, 2019).

### A. Regarding Defendants Orunsolu, Martin, and Knapp, it was not clearly established that double-celling PC and OSR inmates together was a per se violation.

Bateast has not shown any law that put Defendants Orunsolu, Martin, and Knapp on notice that double-celling PC and OSR inmates together was a per se violation. And Bateast has not alleged any facts showing that these defendants were aware of any particularized risk between Bateast and his cellmate Austin. Both Bateast and Austin committed violent incidents in the past. (*See* Exhibit A at 3 (disciplinary report for "Fighting"); Doc. 6-2 at 11.) But nothing indicated that they would commit violent acts against each other. Rather, Bateast has insisted on being self-celled regardless of who his cellmate was. (*See* Doc. 6-2 at 10.) The out-of-circuit cases Bateast cites in his response to the earlier show-cause order are not binding on this Court and address general security issues in common areas, not cellmate situations, patterns of violence toward particular groups of inmates, not alleged here, or patterns of sexual predation, not alleged here. (*See* Doc. 34 at 16.) Accordingly, it was not clearly established that the subjective or objective components of deliberate indifference were met here for housing Bateast and Austin as cellmates. What is more, the KDOC Defendants had "a constitutionally legitimate justification" of maintaining control and discipline in the prison facility, which would naturally include not giving in to every request for a change in cellmates without sufficient reason for the request.

11

**B. Regarding Defendant Orunsolu, it was not clearly established that a PC waiver could not constitutionally be offered to an inmate at the inmate's cell.**

Although it was clearly established that "labelling an inmate an snitch . . . constitutes deliberate indifference to the safety of that inmate," *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001), it was not clearly established that offering an inmate a protective custody waiver at the inmate's cell to *avoid* protective custody (rather than *enter* protective custody) was a violation. The offering of a PC waiver does not necessarily mean the inmate is currently in protective custody.[4] And the Court need not accept as true Bateast's conclusory allegation that Oronsulu acted "with malicious intent." (*See* Doc. 6-2 at 12.) Therefore, it was not clearly established that the subjective or objective components of deliberate indifference were met here.

**C. Regarding Defendants Flores and Lathrom, it was not clearly established that moving a mattress to a new cell violates the Constitution.**

Bateast alleges EDCF has a policy that prohibits moving mattresses from one cell to another. In his response to the *Martinez* Report, he cites only Internal Management Policy & Procedure (IMPP) 12-129D (Doc. 34 at 8), which states merely that "Residents are to be issued . . . one mattress."[5] This does not establish that moving a mattress from one cell to another is prohibited. Bateast does not reference any other particular policy numbers or allege how he has personal knowledge of this supposed policy, so his assertion of this policy against transferring mattresses appears purely speculative.

Second, even if Defendants Flores and Lathrom violated this alleged policy, "a

---

[4] *See Worrell v. Shelton*, No. 06–3352–SAC, 2007 WL 2572420, at *2 (D. Kan. Sept. 4, 2007).
[5] The Court can take judicial notice of this IMPP – which can be found on KDOC's website – under Federal Rules of Evidence 201 and 901, especially 901(b)(4). *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007); *see also* KDOC, IMPP 12-129D, 5 (Feb. 16, 2022), https://www.doc.ks.gov/kdoc-policies/AdultIMPP/chapter-12/12-129d-clothing-linen-resident-hygiene.pdf/view.

defendant's violation of a prison policy does not a constitutional violation make." *Williams v. Miller*, 696 F. App'x 862, 869 & n.14 (10th Cir. 2017) (citing *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993)). Bateast does not allege any specific facts to show that Flores and Lathrom knew about the alleged padlock in Austin's mattress. He makes only speculative and conclusory allegations that Flores (not Lathrom) was "aware of what was to transpire and she intentionally assisted inmate Austin in his attack against me by providing him with that mattress." In light of that, and because no clearly established law held that transferring a mattress in general was a constitutional violation, neither the objective nor subjective elements of deliberate indifference were met regarding the mattress.

### D. For Defendant Perez, the "malicious and sadistic" standard applies due to time pressure and competing safety considerations.

In the context of decisions necessarily "made in haste, under pressure, and frequently without the luxury of a second chance," involving "significant risks to the safety of inmates and prison staff," "as reasonably perceived by the responsible officials on the basis of the facts known to them," a higher state-of-mind standard than deliberate indifference applies. *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). Under this standard, an official must act "maliciously and sadistically for the very purpose of causing harm." *Wilson v. Seiter*, 501 U.S. 294, 302 (1991). This "malicious and sadistic" standard applies due to the "time pressure and need to balance competing safety considerations." *DeSpain v. Uphoff*, 264 F.3d 965, 976 (10th Cir. 2001).

Here, Defendant Perez acted under time pressure. In Bateast's words, the attack by Austin on Bateast "happened so fast." (Doc. 22-1 at 16.) Any decision to intervene would have to be made in haste and under time pressure. And the safety of prison staff came into play, especially that of Gaines and Perez, who were in close proximity to the attack. (*See* Doc. 22-1 at 15-16.) So the higher "malicious and sadistic" standard should apply. Bateast has not alleged any

13

facts to support an inference that Defendant Perez behaved maliciously and sadistically toward him. Rather, from Bateast's own account, it is clear Perez promptly used mace to stop the attack. (*See* Doc. 22-1 at 16.) Alternatively, this also shows that Bateast has failed to state a deliberate indifference claim against Perez. Bateast alleges only that Perez was present when the surprise attack occurred, so the claims against Perez should be dismissed for failure to state a claim.

E. **Regarding Defendant Freeman, it was not clearly established that removing an inmate from a hospital earlier than the hospital staff would prefer or leaving an IV in violates the Constitution.**

With regard to the objective component, Bateast does not allege that removing him from the hospital prevented him from obtaining surgery or that any delay in receiving surgery resulted in substantial harm. With regard to the subjective component, Bateast does not allege specific facts to show that Freeman *knew* that removing Bateast from the hospital would result in Bateast not obtaining pain medication or that it would cause any harm related to the pending surgery. In fact, Bateast alleges that Freeman, upon prompting from hospital staff, waited until medication was injected in Bateast and *then* removed Bateast from the hospital. (*See* Doc. 6-2 at 18; Doc. 6 at 15; Doc. 6-2 at 19.) Bateast has not alleged specific facts to support the objective or subjective components of a deliberate indifference claim against Freeman under clearly established law.

Therefore, the KDOC defendants are entitled to qualified immunity as a matter of law on Bateast's Eighth Amendment claims, which should be dismissed for failure to state a claim.

V. **The KDOC Defendants are entitled to dismissal on any First Amendment retaliation claim for failure to establish a retaliatory motive.**

As the Tenth Circuit has stated:

> To establish a First Amendment retaliation claim, a plaintiff must show that (1) he was engaged in constitutionally protected activity, (2) the government's actions caused him injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the government's actions were substantially motivated as a response to his constitutionally protected conduct.

14

*Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155, 1165 (10th Cir. 2009). This requires alleging "specific facts" showing that "but for" the retaliatory motive, the incident would not have taken place. *Guy v. Lampert*, 748 F. App'x 178, 180 (10th Cir. 2018) (citing *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) and *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010)). "[T]emporal proximity between protected activity and the alleged retaliatory conduct, without more, does not allow for an inference of a retaliatory motive." *Id.* (citing *Trant v. Oklahoma*, 754 F.3d 1158, 1170 (10th Cir. 2014). Here, Bateast vaguely speculates that "Flores had motive to retaliate against him because of grievances he wrote addressing the fact she was passing him contaminated food trays." (Doc. 6-2 at 15.) But he alleges no specific facts to back up this speculation. Therefore, Bateast fails to state a claim for First Amendment retaliation.[6]

For these reasons, the KDOC Defendants request that the Court dismiss Bateast's claims.

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
KRIS W. KOBACH

*/s/ Matthew L. Shoger*
Matthew L. Shoger, KS No. 28151
Assistant Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
matt.shoger@ag.ks.gov
(785) 296-2215
Fax: (785) 291-3767
*Attorney for Defendants*

---

[6] In his response to the *Martinez* Report, Bateast also asserts retaliation by Knapp and Orunsolu. (Doc. 34 at 6 ("At this time I would like to establish motive…").) But Bateast cannot amend his complaint and add claims through motions, notices, or responses. *See Starnes v. Gillespie*, No. Civ.A. 01-3430-CM, 2004 WL 1003358, at *3 n.2 (D. Kan. Mar. 29, 2004); *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020). To amend his complaint at this point, Bateast must have leave of the Court. Fed. R. Civ. P. 15(a)(1)-(2). And it would be futile to amend because the new claim would fail to state a claim for the same reasons as the claim against Flores. *See Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997).

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of October, 2023, the foregoing document was filed with the clerk of the court by using the CM/ECF system, which will send notice of electronic filing to the following:

Natasha Carter
Kansas Department of Corrections
714 SW Jackson, Suite 300
Topeka, KS 66603
natasha.carter@ks.gov
*Attorney for Kansas Department of Corrections, Interested Party*

Robert E. Wasinger
Ellsworth Correctional Facility
1607 State St., PO Box 107
Ellsworth, KS 67439
*Attorney for Kansas Department of Corrections, Interested Party*

I also certify that a copy of the above will be served by means of first-class mail on the 4th day of October, 2023, postage prepaid, addressed to:

Damian M. Bateast, #118348
Hutchinson Correctional Facility
P.O. Box 1568
Hutchinson, KS 67504
*Plaintiff, pro se*

>*/s/ Matthew L. Shoger*
>Matthew L. Shoger
>Assistant Attorney General