IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DAMIAN M. BATEAST,

                        Plaintiff,

v.

OLUWATOSIN S. ORUNSOLU, et al.,

                        Defendants.

Case No. 22-3093-DDC-ADM

## <u>MEMORANDUM AND ORDER</u>

Under the Eighth Amendment, prison officials bear a constitutional duty to protect prisoners from known substantial risks of serious harm.  Pro se plaintiff Damian Bateast,[1] a former inmate at the Kansas Department of Corrections ("KDOC") El Dorado Correctional Facility, sues nine correctional officers and three medical personnel in their official and individual capacities.  He invokes 42 U.S.C. § 1983, claiming defendants violated his Eighth Amendment rights.  Doc. 65 (2nd Am. Compl.).  Plaintiff argues defendants failed to protect him from an attack by his cellmate and, following the attack, defendants acted with deliberate indifference to plaintiff's medical needs.  He seeks $25,000 in compensatory damages and $25,000 in punitive damages from each defendant.

In response, defendants have filed three Motions to Dismiss, each under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  Eight KDOC officers—Defendants Oluwatosin Orunsolu, Adam Knapp,

---

[1]      Because plaintiff appears pro se, the court construes his pleadings liberally and holds them "to a less stringent standard than formal pleadings drafted by lawyers."  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  But the court can't assume the role of his advocate.  *Id.*

Malty Martin, Dana Flores, A. Keith Latham,[2] Orlando Perez, and Eric Freeman (collectively "KDOC Defendants") and defendant Alexander Gannon—filed Motions to Dismiss (Doc. 71; Doc. 76), citing Eleventh Amendment immunity and qualified immunity.  Two medical provider defendants—Dr. Gordon Harrod and Nurse Denise Mislap[3]—filed a Motion to Dismiss (Doc. 82), citing plaintiff's failure to exhaust administrative remedies and failure to meet the statute of limitations.  The court grants all the motions and explains why, below.

## I.      Background

The following facts come from the Second Amended Complaint (Doc. 65).[4]  They control the current motion.

Plaintiff bases his claims on an incident that occurred on June 26, 2020.  Plaintiff Damian Bateast was an inmate at KDOC's El Dorado Correctional Facility ("EDCF") housed in restrictive housing under protective custody ("PC") for his safety.  Doc. 65 at 8 (2nd Am. Compl.).  To receive PC, an inmate must reveal to prison officials the reasons for his request.  *Id.* at 10.  Other inmates view this disclosure suspiciously and consider the inmate requesting PC as a snitch.  *Id.*  Defendants Oluwatosin Orunsolu, Adam Knapp, and Malty Martin—EDCF corrections officers—assigned plaintiff a cellmate, Inmate Austin, who was in restrictive housing based on Inmate Austin's gang affiliation and violent attitude.  *Id.* at 7–8.

---

[2]      The record contains multiple possible spellings of this defendant's name.  The court uses the spelling from plaintiff's Second Amended Complaint, in the hope that's the correct one.

[3]      The record also contains multiple possible spellings of this defendant's name—plaintiff uses "Mislap" but the Motion to Dismiss uses "Milsap."  *Compare* Doc. 65 at 16, *with* Doc. 82.  The court uses the spelling from plaintiff's Second Amended Complaint, but its ruling extends equally to Ms. Milsap if that spelling is the correct one.

[4]      Plaintiff's Second Amended Complaint is difficult to decipher in places.  The court does its best.

On June 26, 2020, Officer Knapp made his daily rounds. *Id.* at 8. At plaintiff's cell, Inmate Austin complained to Officer Knapp about being celled in restrictive housing. *Id.* Officer Knapp told Inmate Austin that "an event has to happen" for EDCF to remove Inmate Austin from restrictive housing. *Id.* at 8–9. Plaintiff stopped Officer Orunsolu when he passed plaintiff's cell. *Id.* at 9. Plaintiff asked Officer Orunsolu to move him to another cell because he felt unsafe around Inmate Austin. *Id.* Officer Orunsolu suggested that plaintiff return to general population. *Id.* Officer Orunsolu then slid a PC waiver under plaintiff's cell for plaintiff to sign, but he refused to sign the waiver. *Id.* Officer Orunsolu replied, "It doesn't matter if you sign it or not." *Id.* This interaction exposed plaintiff's PC status to the entire cellhouse, making plaintiff a target. *Id.* at 10. Plaintiff told Officer Orunsolu that he'd revealed his PC status, to which Officer Orunsolu replied: "Who cares." *Id.* at 9–10.

That same day, defendants Dana Flores and A. Keith Latham—EDCF corrections officers—moved plaintiff and Inmate Austin from one cell to another. *Id.* at 11. Officer Flores and Officer Latham prohibited plaintiff and Inmate Austin from bringing their mattresses to the new cell. *Id.* Yet after repeated requests—including a hushed conversation at the cell door— Officer Flores eventually brought Inmate Austin's old mattress to the new cell. *Id.* The old mattress concealed a lock, which Inmate Austin later used to attack plaintiff.

Later, defendants Mason Gaines and Orlando Perez—also EDCF corrections officers— approached plaintiff's cell to handcuff and escort him to take a shower. *Id.* at 12. While Officer Gaines handcuffed plaintiff, Inmate Austin removed a contraband lock from his mattress and struck plaintiff across the face with the lock. *Id.* Inmate Austin and Officer Gaines coordinated their actions by giving each other signals with their head and eyes. *Id.* Officer Gaines restrained plaintiff by the handcuffs and Inmate Austin attacked plaintiff for "a substantial amount of time"

until an officer intervened by spraying mace.  *Id.* at 12–13.  Two officers escorted plaintiff to the infirmary.  *Id.* at 13.  The next day, Officer Perez told plaintiff that this wasn't Inmate Austin's first time attacking another inmate and that inmates and prison officials "knew what was coming."  *Id.*  Plaintiff, however, was unaware.  *Id.*

At the infirmary, defendant Rochelle Graham, a nurse, examined plaintiff.  *Id.* at 14.  She only cleaned the wound on plaintiff's elbow despite plaintiff having a tennis ball-sized knot on his forehead, a black eye that was swollen closed, and having to be held upright on the examination table due to extreme dizziness.  *Id.*  Then, plaintiff was placed in an isolated suicide watch cell in the infirmary.  *Id.*  The cell did not have an emergency call button.  *Id.*  Plaintiff experienced dizziness, pain, and repeatedly vomited throughout the night.  *Id.*  To get the attention of the nurse and officer working the infirmary, plaintiff had to beat on the window.  *Id.*  Defendant Denise Mislap, a nurse, responded to plaintiff beating on the window.  *Id.*  Plaintiff requested to see a doctor or speak with someone who could help, but Nurse Mislap replied that there was nothing she could do.  *Id.* at 15.  Nurse Mislap gave plaintiff two tablets of ibuprofen and five Prednisone tablets.  *Id.*  But plaintiff only could take one Prednisone at a time because he knows they're steroids and too many could cause an overdose.  *Id.*  When the nursing staff changed shifts, the afternoon nurses arranged for plaintiff to visit the hospital.  *Id.*  Defendants Eric Freeman and Alexander Gannon—EDCF correctional officers—transported plaintiff to the hospital.  *Id.*

At the hospital, medical staff conducted a blood test and x-rays on plaintiff.  *Id.*  The x-rays revealed plaintiff suffered severe head trauma and a fractured eye socket, possibly requiring surgery.  *Id.*  Officers Freeman and Gannon tried to remove plaintiff from the hospital.  *Id.* at 15–16.  The doctor stopped them and explained that he hadn't discharged plaintiff or finished

evaluating him.  *Id.*  Then, a nurse gave plaintiff medication.  *Id.*  After the nurse left plaintiff's room, Officers Freeman and Gannon rushed plaintiff out of the hospital, back to EDCF, without removing the IV needle in plaintiff's arm.  *Id.* at 16.  Plaintiff rode back to EDCF with the IV needle in his arm.  *Id.*

Once plaintiff arrived back at the EDCF infirmary, he notified Nurse Mislap about the remaining IV needle in his arm.  *Id.*  The needle was leaking blood.  *Id.*  Plaintiff had to hold his arm out straight, otherwise the needle would move and stick him, causing him pain.  *Id.*  Nurse Mislap did not remove the needle.  *Id.*  Plaintiff later removed the needle himself when an officer came to move plaintiff to a room with a bed and call button.  *Id.*

The next day, plaintiff spoke with defendant Dr. Gordon Harrod about his pain.  *Id.* Plaintiff requested to shower and use the phone.  *Id.* at 17.  Dr. Harrod told plaintiff "you don't have to be here."  Later, plaintiff returned to his cell outside the infirmary, against the doctor's orders.  *Id.*  Plaintiff couldn't take his pain medication because it was a narcotic, prohibited outside the infirmary.  *Id.*  Without his medication, plaintiff experienced severe pain and headaches from his injuries.  *Id.*

## II.        Procedural History

In May 2022, plaintiff sued EDCF corrections officers and medical personnel under 42 U.S.C. § 1983 for failing to protect him adequately from attack while in protective custody, and for their deliberate indifference to plaintiff's serious medical needs, all violating the Eighth Amendment.  Doc. 1.  Shortly thereafter, plaintiff filed an Amended Complaint (Doc. 6).  The

court screened plaintiff's Amended Complaint and entered an Order (Doc. 8) directing EDCF officials to prepare a *Martinez* report.[5]

In March 2023, EDCF officials filed the *Martinez* Report (Doc. 22), including as exhibits affidavits from corrections officer defendants, an EDCF use of force report, plaintiff's Kansas Adult Supervised Population Electronic records (KASPER), his medical records, and his grievance forms.  Doc. 22-1.  The Report concluded that plaintiff's "grievance records do[] not show the Plaintiff exhausted his administrative remedies[.]"  Doc. 22 at 4.  The Report also concluded that EDCF's investigations found "no evidence to substantiate the Plaintiff's allegations . . . that the Defendant[s] failed to protect him" and "no evidence of deliberate indifference regarding the medical care and treatment the Plaintiff received after the June 26, 2020, incident."  *Id.* at 8.  In April 2023, the court reviewed the *Martinez* Report and screened plaintiff's claims under 28 U.S.C. § 1915A.  It concluded that, "[i]n light of the *Martinez* Report and . . . the Amended Complaint, the Court is considering dismissal of this matter for failure to state a claim on which relief can be granted."  Doc. 29 at 11; *Bateast v. Orunsolu*, No. 22-3093-JWL, 2023 WL 3072669, at *6 (D. Kan. Apr. 25, 2023).  The court ordered plaintiff to respond to the *Martinez* Report and to show good cause why dismissal should not be entered.  *Bateast*, 2023 WL 3072669, at *6.  Plaintiff responded (Doc. 34), opposing the Report's conclusions—but not disputing the attached exhibits—and reaffirming his claims against defendants.  Plaintiff later filed a Second Amended Complaint (Doc. 65).

KDOC Defendants and Officer Gannon responded with Motions to Dismiss (Doc. 71; Doc. 76) under Fed. R. Civ. P 12(b)(1) and 12(b)(6), invoking sovereign immunity and qualified

---

[5]     A *Martinez* report is a "court authorized report and investigation by prison officials to determine whether a pro se prisoner's allegations have any factual or legal basis."  *Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992).

immunity.  Dr. Harrod and Nurse Mislap also filed a Motion to Dismiss (Doc. 82) under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for failure to exhaust administrative remedies and failure to comply with the statute of limitations.  Plaintiff missed the window to respond to defendants' motions.  But he responded after the court had issued a Show Cause Order (Doc. 86) directing plaintiff to show cause why the court shouldn't consider and rule on defendants' motions as uncontested.  Doc. 89.

Defendants seek dismissal under two provisions of Rule 12—Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  The court recites the legal standard governing dismissal under each provision, below.

## III.       Legal Standards

The court begins with Rule 12(b)(1).  Under this provision, a defendant may move the court to dismiss for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction."  *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002).  Federal district courts have original jurisdiction over all civil actions arising under the constitution, laws, or treaties of the United States or where there is diversity of citizenship.  28 U.S.C. §§ 1331–32.  "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).  The party invoking federal jurisdiction bears the burden to prove it exists.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 906 F.3d 926, 931 (10th Cir. 2018).

Defendants also invoke Rule 12(b)(6).  Under it, a party may move to dismiss an action for failing "to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  For a complaint to survive a Rule 12(b)(6) motion to dismiss, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

When considering a Rule 12(b)(6) motion to dismiss, the court must assume that the factual allegations in the complaint are true, but it is "'not bound to accept as true a legal conclusion couched as a factual allegation[.]'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  And while this pleading standard doesn't require "'detailed factual allegations,'" it demands more than a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, the Supreme Court has explained, simply "'will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).

Typically, when the court considers materials outside the pleadings, it must convert a Rule 12 motion into a summary judgment motion.  Fed. R. Civ. P. 12(d).  This restriction, however, does not apply to uncontested portions of a *Martinez* report.  *See Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991) ("[I]n particular circumstances the *Martinez* report may be considered part of the pleadings for purposes of Fed. R. Civ. P. 12(b).").  "While a *Martinez* report cannot be used to resolve genuine factual disputes, it may, to the extent it is uncontroverted, support dismissal for failure to state a claim and for lack of exhaustion."  *Williams v. Trammell*, 678 F. App'x 668, 669 n.1 (10th Cir. 2017) (citing *Gallagher v. Shelton*, 587 F.3d 1063, 1067–68, 1067 n.7 (10th Cir. 2009) ("The *Martinez* report may not be used to resolve disputed factual issues.  However, an uncontroverted report may serve as the basis for a dismissal." (internal citations omitted))).

IV.        **Analysis**

Defendants bring three different Motions to Dismiss.  Dr. Harrod and Nurse Mislap seek

dismissal because plaintiff failed to exhaust administrative remedies and he missed the statute of

limitations.  The court addresses this motion first.  KDOC Defendants and Officer Gannon seek

dismissal based on Eleventh Amendment immunity and qualified immunity.  Because they

invoke the same immunity arguments, the court addresses KDOC Defendants and Officer

Gannon's motions together after.

A.        **Defendants Dr. Harrod and Nurse Mislap's Motion to Dismiss (Doc. 82)**

Plaintiff alleges defendants Dr. Harrod and Nurse Mislap were deliberately indifferent to

plaintiff's serious medical needs under the Eighth Amendment.  Dr. Harrod and Nurse Mislap

seek to dismiss these claims for two reasons.  *First*, they contend, plaintiff is barred from

bringing this suit because he failed to exhaust all available administrative remedies.  *Second*,

they contend, the statute of limitations bars plaintiff's claims against Nurse Mislap.  The court

addresses each argument, in turn, below.

1.        **Failure to Exhaust Administrative Remedies**

The Prison Litigation Reform Act ("PLRA") requires inmates to exhaust all available

prison administrative remedies before filing a complaint in federal court.  Section 1997e(a)

expressly provides:  "No action shall be brought with respect to prison conditions under section

1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other

correctional facility until such administrative remedies as are available are exhausted."  42

U.S.C. § 1997e(a); *see also Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (stating that

under the PLRA "a prisoner must exhaust his administrative remedies prior to filing a lawsuit

regarding prison conditions in federal court").  This exhaustion requirement "is mandatory, and

the district court [is] not authorized to dispense with it."  *Beaudry v. Corr. Corp. of Am.*, 331

9

F.3d 1164, 1167 n.5 (10th Cir. 2003), *cert. denied*, 540 U.S. 1118 (2004). A prison or prison system's regulations define the steps a prisoner must follow to exhaust administrative remedies properly and a prisoner "may only exhaust by properly following all of the steps laid out" in those regulations. *Little*, 607 F.3d at 1249 (citing *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). In suits governed by the PLRA, failure to exhaust is an affirmative defense and the defendant bears the burden of proof. *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007).

For Kansas state prisoners, the administrative remedies first require the inmate to seek an informal resolution with personnel who work with the inmate directly or daily. Kan. Admin. Regs. § 44-15-101(b). "That attempt shall be documented[.]" *Id.* If the informal resolution is unsuccessful, the inmate then must progress through a three-level grievance process that includes submitting a grievance report form to (1) the appropriate unit team member, (2) the warden of the facility, and (3) the office of the secretary of corrections. *Id.* § 44-15-101(d). At step one, if the unit team fails to respond within 10 calendar days, the inmate may send a grievance report to the warden without the unit team's signatures. *Id.* § 44-15-102(a)(2). The grievance report must "include an explanation of the absence of the . . . signatures." *Id.* At step two, if the warden fails to respond within 10 calendar days, the inmate may send the grievance to "the secretary of corrections with an explanation of the reason for the delay . . . within three calendar days of the deadline for [the warden's] decision[.]" *Id.* §§ 44-15-102(b)(3)(A)(ii), (G), (c)(1). At step three, if the secretary receives a grievance "without prior action by the warden," the secretary may return the form to the warden or, if the warden failed to timely respond, the secretary may accept the form. *Id.* § 44-15-102(c)(4). The secretary has "20 working days from receipt to return the grievance report form to the inmate with an answer." *Id.* § 44-at-102(c)(3). And, when KDOC responds "to parts of grievances that are procedurally or substantively appropriate," it doesn't

waive "defects with the remaining parts of the grievance that are not procedurally or substantively appropriate." *Id.* § 44-15-102(d)(2).

Dr. Harrod and Nurse Mislap's papers do not explain, at least not clearly, whether they challenge plaintiff's failure to exhaust administrative remedies under Rule 12(b)(1) or Rule 12(b)(6). "Rule 12(b)(1) is designed for challenges to the court's subject-matter jurisdiction. It does not apply to issues of exhaustion under PLRA." *Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1209 (10th Cir. 2003) (citation and internal quotation marks omitted), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007) (holding failure to exhaust under PLRA is an affirmative defense). The court thus analyzes defendants' exhaustion argument under 12(b)(6), not 12(b)(1).

Dr. Harrod and Nurse Mislap argue that plaintiff "is barred from pursuing a § 1983 claim" because he "failed to properly submit his grievance in compliance with EDCF's procedural rules." Doc. 83 at 4. They're right. Plaintiff has failed to comply with the grievance process, outlined above, in three distinct ways.

*First*, plaintiff failed to employ informal dispute resolution procedures before beginning the three-step grievance process. Before plaintiff can begin the grievance process, he must "attempt[] to reach an informal resolution of the matter" and "[t]hat attempt shall be documented." Kan. Admin. Regs. § 44-15-101(b). Plaintiff contends he satisfied the Kansas grievance procedure, citing Exhibit B to the *Martinez* Report. Doc. 89 at 4–5. But Exhibit B contains no documents showing that plaintiff has tried to reach an informal resolution of the June 26, 2020, matter. *See* Doc. 22-1 at 5–23 (Ex. B). Instead, Exhibit B contains a KDOC "Inmate Request to Staff Member" form labeled "Form 9." *Id.* at 8–9. Plaintiff filed that form on March 29, 2020—months before Inmate Austin allegedly assaulted plaintiff or shared his cell. *Id.*

While plaintiff asks to live in a cell alone in his request, Form 9 has nothing to do with the particular facts of this case or the later grievance plaintiff submitted to the warden and secretary. *See id.* at 12–23 (grievance forms recounting specifics of the June 26 events).  Plaintiff thus failed to satisfy the informal resolution step required to exhaust administrative remedies.

*Second*, plaintiff exceeded the time limit for filing his grievance with the secretary after receiving no response from the warden.  Plaintiff contends that he filed a grievance with his unit team on July 15, 2020—step one.  Doc. 89 at 4.  After waiting 10 days and receiving no response from his unit team, plaintiff alleges he moved forward with the grievance process and sent his grievance to the warden—step two.  *Id.*  In support, plaintiff again cites a portion of Exhibit B, which he describes as a "grievance receipt signed and dated by corrections officer Rivera on 7-27-2020 stating he submitted [plaintiff's] grievance to unit team to be forwarded to the warden." Doc. 22-1 at 5.  After waiting 10 days and getting no response from the warden, plaintiff contends he sent his grievance to the secretary—step three.  *Id.* at 5.  But the uncontroverted exhibits from the *Martinez* Report show plaintiff didn't make step three's deadline.

Plaintiff had to submit his grievance to the secretary within 13 days from submitting his grievance to the warden.[6]  Kan. Admin. Regs. §§ 44-15-102(b)(3)(A)(ii), (G), (c)(1).  But, according to Exhibit B, the secretary didn't receive plaintiff's grievance until August 31, 2020— 35 days after plaintiff had submitted his grievance to the warden.  Doc. 22-1 at 6–7.  Plaintiff thus failed to comply with the deadlines required to exhaust administrative remedies.  *See Lindsey v. Cook*, No. 5:19-CV-03094-HLT, 2021 WL 483855, at *3 (D. Kan. Feb. 4, 2021) (holding plaintiff "[b]y his own admission, . . . did not comply with the timeline and he

---

[6]      Plaintiff had 13 days to appeal to the secretary here because the warden had ten days to respond to plaintiff's grievance.  Kan. Admin. Regs. § 44-15-102(b)(3)(A)(ii).  When the secretary failed to issue a decision, plaintiff had to appeal "within three calendar days of the deadline for that decision[.]"  *Id.* § 44-15-102(c)(1).  The ten days plus the three days equals 13 days.

provide[d] no authority excusing this noncompliance" when he "sent a grievance to the warden and waited 20 days before sending a grievance to the secretary of corrections").

*Third*, plaintiff failed to remedy defects in his grievance.  When plaintiff forwarded his grievance to the secretary, Mr. Douglas Burris, a Corrections Manager, responded:

> K.A.R. 44-15-102 requires an inmate to file a formal grievance with the principal administrator of the facility before appealing to the Secretary. . . . The content of your grievance form reflects no evidence that you filed your grievance with the facility principal administrator before pursuing an appeal with the Secretary.

Doc. 22-1 at 5 (Ex. B at 1).  This response, defendants assert, informed plaintiff "that he had failed to comply with the procedural grievance requirements[.]"  Doc. 83 at 4.  Yet, "[p]laintiff took no corrective action to cure the procedural defects."  *Id.*  So, according to defendants, plaintiff failed to complete the grievance process and thus exhaust his administrative remedies. *Id.*  In response, plaintiff urges "it is obvious plaintiff followed the grievance procedure to the best of his ability and tried to grieve [his] issues with prison officials for relief to no avail."  Doc. 89 at 5 (capitalization omitted).

Unfortunately, for plaintiff, in the context of administrative exhaustion under the PLRA "the doctrine of substantial compliance does not apply."  *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).  "An inmate who begins the grievance process *but does not complete it* is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies."  *Id.* (emphasis added).  "[E]xhaustion requires a final decision by the Secretary either on the merits or imposing a final procedural bar to further process."  *Pusha v. Myers*, 608 F. App'x 612, 615 (10th Cir. 2015).  Mr. Burris's letter doesn't qualify as a final decision, nor does it impose any kind of bar.  Instead, it informed plaintiff that his grievance suffered from defects. "To properly complete the process, a prisoner must correct any deficiencies in his submissions." *Id.* at 615 n.3; *see also Woodford*, 548 U.S. at 90 ("[P]roper exhaustion of administrative

remedies . . . means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." (citation and internal quotation marks omitted)).  But plaintiff never corrected the deficiencies in his grievances and so, the agency never addressed plaintiff's issues on the merits.  Plaintiff thus failed to complete the grievance process required to exhaust administrative remedies.  *See Jernigan*, 304 F.3d at 1032 (affirming dismissal where prisoner failed to exhaust administrative remedies when he filed suit rather than attempting to cure a deficiency in his grievance submission).

To conclude, Dr. Harrod and Nurse Mislap shoulder their burden to show plaintiff has failed to exhaust his administrative remedies imposed by Kan. Admin. Regs. § 44-15-102.  Plaintiff failed to attempt informal dispute resolution before starting the three-step grievance process.  He missed the deadline to file a grievance with the secretary after filing a grievance with the warden.  And, after plaintiff received Mr. Burris's letter, he never remedied his defective grievance.  The court thus dismisses plaintiff's claims against Dr. Harrod and Nurse Mislap.

While the analysis could end here, the court nevertheless analyzes defendants' argument that plaintiff's claims against Nurse Mislap also fail because are untimely under the statute of limitations.

## 2.    Statute of Limitations

Also, Nurse Mislap contends that the statute of limitations bars plaintiff from prevailing on his claims against her.  "Section 1983 provides a federal cause of action," but federal law "looks to the law of the State in which the cause of action arose" to determine the applicable statute of limitations.  *Wallace v. Kato*, 549 U.S. 384, 387 (2007).  Courts apply the "statute of limitations which the State provides for personal-injury torts."  *Id.*  Because plaintiff's § 1983 claims arose in Kansas, the court applies Kansas's two-year statute of limitations for personal

14

injury actions to his claims. *See* Kan. Stat. Ann. § 60-513(a)(4). "If from the complaint, the dates on which the pertinent acts occurred are not in dispute, then the date a statute of limitations accrues is a question of law suitable for resolution at the motion to dismiss stage." *Herrera v. City of Espanola*, 32 F.4th 980, 991 (10th Cir. 2022) (quotation cleaned up).

Plaintiff alleges Nurse Mislap was deliberately indifferent to plaintiff's serious medical needs when Nurse Mislap treated plaintiff on June 26 and 27, 2020. Doc. 65 at 14–16 (2nd Am. Compl.). Under Kansas's two-year statute of limitations, plaintiff had until June 27, 2022, to sue Nurse Mislap. *See* Kan. Stat. Ann. § 60-513(a)(4). He missed that deadline. Plaintiff filed his Complaint on May 9, 2022—within the statute of limitations—but failed to name Nurse Mislap as a defendant. *See* Doc. 1 (Compl.). Instead, plaintiff referenced a nurse he calls "Jane Doe" in his statement of the claim section. *Id*. at 7 (Compl.). Plaintiff filed an Amended Complaint on July 5, 2022—outside the statute of limitations—this time mentioning a "Jane Doe" nurse in both the defendant and statement of the claims sections. Doc. 6 at 13–16 (Am. Compl.). Plaintiff filed his Second Amended Complaint on November 17, 2023—more than a year past the statute of limitations deadline—this time naming Nurse Mislap as a defendant. Doc. 65 at 4 (2nd Am. Compl.). Plaintiff's claims against Nurse Mislap in the Second Amended Complaint surpass the statute of limitations.

Plaintiff responds to his statute of limitations problem, arguing that his claims against Nurse Mislap comply with the statute of limitations because, under Fed. R. Civ. P. 15(c), his claims in the November 2023 Second Amended Complaint relate back to the timely filed Complaint. Doc. 89 at 5. Plaintiff explains "the reason for the Amended Complaint . . . was to identify the defendants by name in which Jane Doe was identified as Denise Mislap." *Id.* (capitalization omitted). Under Rule 15:

> An amendment to a pleading relates back to the date of the original pleading when . . . the amendment changes the party . . . against whom a claim is asserted, if . . . the party to be brought in by amendment . . . (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1).  Defendants contend that Rule 15(c) doesn't apply because Nurse Mislap "had no reason to anticipate being named as a defendant in the present controversy due to her brief interaction with Plaintiff."  Doc. 83 at 5.  Defendants continue:  "Plaintiff's failure to name Defendant Mislap in his original complaint is not a 'mistake' cognizable under Rule 15(c)."  *Id.*  Tenth Circuit precedent agrees.  A "plaintiff's lack of knowledge of the intended defendant's identity is not a 'mistake concerning the identity of the proper party' within the meaning of Rule 15(c)[.]"  *Garrett v. Fleming*, 362 F.3d 692, 696 (10th Cir. 2004).[7]  "A plaintiff's designation of an unknown defendant as 'John Doe'"—or, as here, Jane Doe—"in the original complaint is not a formal defect of the type Rule 15(c)[] was meant to address."  *Id.* at 697.  So, the Second Amended Complaint's operative date is November 17, 2023—the date when plaintiff filed it.  Because plaintiff fails to satisfy Rule 15(c), the statute of limitations as it relates to Nurse Mislap's claims doesn't relate back to the originally filed Complaint.

The court thus dismisses plaintiff's claims against Nurse Mislap because plaintiff failed to bring them within the two-year statute of limitations.

### 3.    Conclusion

In sum, the court grants Dr. Harrod and Nurse Mislap's Motion to Dismiss (Doc. 82).  Plaintiff failed to exhaust administrative remedies under Kan. Admin. Regs. § 44-15-102.  And, under the PLRA, that won't do.  The statute of limitations also bars plaintiff's claims against

---

[7]   This quote references Rule 15(c)(3)(B).  Rule 15 since has been revised and that section no longer exists.  The standard referenced in *Garrett* now lives in subsection (c)(1)(C).

Nurse Mislap.  Having resolved Dr. Harrod and Nurse Mislap's Motion to Dismiss, the court

now considers KDOC Defendants and Officer Gannon's Motions to Dismiss.[8]

**B.      KDOC Defendants and Officer Gannon's Motions to Dismiss (Doc. 71; Doc. 76)**

Plaintiff also brings § 1983 claims against KDOC Defendants and Officer Gannon for

failing to protect him and deliberate indifference to serious medical needs, violating the Eighth

Amendment.  Specifically, Count I of plaintiff's Second Amended Complaint asserts a § 1983

claim against Officers Orunsolu, Knapp, and Martin for "double-celling" plaintiff—a PC

inmate—with Inmate Austin, a violent inmate.  Doc. 65 at 7–9 (2nd Am. Compl.).  Count I also

asserts a § 1983 claim against Officer Orunsolu for exposing plaintiff's PC status to the other

inmates in restrictive housing.  *Id.* at 9–10.  Count II asserts a § 1983 claim against Officers

Flores and Latham for permitting Inmate Austin to bring his old mattress to the new cell.  *Id.* at

11–12.  Count II also asserts a § 1983 claim against Officer Perez for knowing Inmate Austin

would attack plaintiff, yet waiting to intervene, thus allowing Inmate Austin to continue to attack

plaintiff.  *Id.* at 12–13.  Count III asserts a § 1983 claim against Officers Freeman and Gannon

for removing plaintiff prematurely from the offsite hospital with an IV needle still remaining in

his arm.  *Id.* at 14–16.  Plaintiff sues these defendants in both their individual and official

capacities.  Doc. 89 at 1.

---

[8]      Dr. Harrod and Nurse Mislap's success on the exhaustion issue doesn't extend to the KDOC Defendants or Officer Gannon.  *See Purkey v. CCA Det. Ctr.*, 263 F. App'x 723, 725–26 (10th Cir. 2008) ("[F]ailure to exhaust available administrative remedies on one claim does not warrant dismissal of the entire action." (citation and internal quotation marks omitted)).  And, because the "PLRA exhaustion requirement is not jurisdictional," a defendant can waive an exhaustion defense by failing to raise it. *Woodford*, 548 U.S. at 101.  "If exhaustion is not jurisdictional,"—and here, it's not—"the court must dismiss only if the issue has been properly presented for decision."  *McQueen ex rel. McQueen v. Colo. Springs Sch. Dist. No. 11*, 488 F.3d 868, 873 (10th Cir. 2007).  KDOC Defendants and Officer Gannon haven't raised the failure to exhaust defense.  *See generally* Doc. 72; Doc. 77.

KDOC Defendants and Officer Gannon each filed a Motion to Dismiss (Doc. 71; Doc. 76), arguing Eleventh Amendment immunity shields them from the claims made against them in their official capacities, and that qualified immunity shields them from claims made in their individual capacities as well.  Doc. 72 at 5, 9; Doc. 77 at 5.

The court begins with the Eleventh Amendment immunity doctrine, deciding whether KDOC Defendants and Officer Gannon deserve Eleventh Amendment immunity against plaintiff's Eighth Amendment failure to protect and indifference to serious medical needs claims in Counts I–III in their official capacities.  Then, after concluding that KDOC Defendants and Officer Gannon are entitled to Eleventh Amendment immunity, the court considers whether they're entitled to qualified immunity against the claims asserted in Counts I–III.  They sue defendants in their individual capacities.

### 1.    Eleventh Amendment Immunity

Plaintiff seeks $25,000 in compensatory damages and $25,000 in punitive damages from each defendant.  Doc. 65 at 18 (2nd Am. Compl.).  The Eleventh Amendment bars suits seeking to recover money damages from state actors acting in their official capacities.  *See Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997) ("It has long been settled that the [Eleventh Amendment's] reference to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities." (citations omitted)).  Generally, KDOC officers sued in their official capacities share the state's sovereign immunity.  *See Jones v. Courtney*, 466 F. App'x 696, 700 (10th Cir. 2012) (ordering district court to dismiss KDOC defendant sued in official capacity because defendant was entitled to Eleventh Amendment immunity).  However, the immunity conferred by the Eleventh Amendment "is not absolute."  *Muscogee (Creek) Nation v.*

*Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012) (citation omitted).  As our Circuit has explained it, three exceptions exist to Eleventh Amendment immunity:

> First, a state may consent to suit in federal court.  Second, Congress may abrogate a state's sovereign immunity by appropriate legislation when it acts under Section 5 of the Fourteenth Amendment.  Finally, under *Ex parte Young*, 209 U.S. 123 (1908), a plaintiff may bring suit against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief.

*Id.* (citations omitted).  None of these exceptions apply here.

*First*, Kansas hasn't waived its immunity.  *Jones*, 466 F. App'x at 700 (explaining that while "Kansas has consented to suit for damages under the Kansas Tort Claims Act[,]" the KTCA doesn't waive Eleventh Amendment immunity because the statute explicitly disclaims a waiver (citing Kan. Stat. Ann. § 75-6116(g) (further citations and internal quotation marks omitted))).  *Second*, Congress didn't abrogate state sovereign immunity when it enacted 42 U.S.C. § 1983.  *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1196 (10th Cir. 1998) (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)).  And *third*, the Eleventh Amendment exception doesn't apply to plaintiff's claim for monetary damages.  The Supreme Court's *Ex parte Young* decision applies only to injunctive and declaratory relief.  *Hill v. Kemp*, 478 F.3d 1236, 1255–56 (10th Cir. 2007) ("[T]he Eleventh Amendment generally will not operate to bar suits so long as they (i) seek only declaratory and injunctive relief rather than monetary damages for alleged violations of federal law, and (ii) are aimed against state officers acting in their official capacities, rather than against the State itself.").

In sum, the Eleventh Amendment bars plaintiff's claims for monetary damages asserted against KDOC Defendants and Officer Gannon while acting in their official capacities.  The court thus lacks jurisdiction over these claims and dismisses them.  Only plaintiff's claims

against KDOC Defendants and Officer Gannon in their individual capacities remain.  The court considers those claims next.

### 2.    Qualified Immunity

In Counts I–III, plaintiff brings § 1983 claims against KDOC Defendants and Officer Gannon in their individual capacities.  These claims theorize that KDOC Defendants and Officer Gannon violated plaintiff's Eighth Amendment rights.  Doc. 65 at 7–17 (2nd Am. Compl.). KDOC Defendants and Officer Gannon seek dismissal of plaintiff's claims in their individual capacities because, the argue, they're entitled to qualified immunity.  Doc. 72 at 9–14; Doc. 77 at 5–7.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The qualified immunity analysis has two prongs.  Plaintiff must (1) adduce facts that "make out a violation of a constitutional right," and (2) demonstrate that "the right at issue was clearly established at the time of defendant's alleged misconduct."  *Id.* at 232 (citation and internal quotation marks omitted).  A court has discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id.* at 236.  Here, the court begins and ends its analysis with the clearly established prong.

KDOC Defendants and Officer Gannon deserve qualified immunity if clearly established law does not show that their conduct—double-celling plaintiff with Inmate Austin, revealing plaintiff's PC status, permitting Inmate Austin to bring his old mattress to the new cell, waiting to intervene when Inmate Austin assaulted plaintiff, and prematurely removing plaintiff from the hospital with an IV needle still in his arm—violated the Eighth Amendment.  Qualified

"immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson*, 555 U.S. at 231).  Qualified "immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *City of Tahlequah, Okla. v. Bond*, 595 U.S. 9, 12 (2021) (*quoting District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)).

"A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'"  *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (quoting *Mullenix*, 577 U.S. at 11).  "The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority[.]"  *Wesby*, 583 U.S. at 63 (quotation cleaned up) (first citing *Hunter v. Bryant*, 502 U.S. 224, 228 (1991); then citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741–42 (2011)).  Such authority usually takes the form of case law.  "Ordinarily, a plaintiff may satisfy this clearly-established-law standard by identifying an on-point Supreme Court or published Tenth Circuit decision that establishes the unlawfulness of the defendant's conduct; alternatively, the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019) (quotation cleaned up).  This standard doesn't require a perfect match in the form of "a case directly on point," but plaintiff must provide a close match—"existing precedent must have placed the statutory or constitutional question beyond debate."  *al-Kidd*, 563 U.S. at 741.

"This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'"  *Rivas-Villegas*, 595 U.S. at 5–6 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).  The Supreme Court has emphasized that "'clearly established law'

should not be defined 'at a high level of generality[.]'"  *White v. Pauly*, 580 U.S. 73, 79 (2017)

(quoting *al-Kidd*, 563 U.S. at 742); *see also Bond*, 595 U.S. at 12 ("We have repeatedly told

courts not to define clearly established law at too high a level of generality.").  Plaintiff cannot

"'alleg[e] violation of extremely abstract rights.'"  *White*, 580 U.S. at 79 (quoting *Anderson v.

Creighton*, 483 U.S. 635, 639 (1987)).  "The dispositive question is 'whether the violative nature

of *particular* conduct is clearly established.'"  *Mullenix*, 577 U.S. at 12 (quoting *al-Kidd*, 563

U.S. at 742); *see also White*, 580 U.S. at 79 ("As this Court explained decades ago, the clearly

established law must be 'particularized' to the facts of the case." (citing *Anderson*, 483 U.S. at

640)).

The court now examines each claim, count by count, to decide whether plaintiff has

identified clearly established law for each of his claims against the KDOC Defendants and

Officer Gannon.

### a.       Count I

In Count I, plaintiff argues that "defendants violated his Eighth Amendment right"

because "[d]efendants were deliberately indifferent to plaintiff's need for safety by failing to

provide proper protection from inmate assault while in protective custody."  Doc. 65 at 7 (2nd

Am. Compl.).  Plaintiff alleges Officers Orunsolu, Knapp, and Martin failed to protect him from

inmate assault by double-celling plaintiff—a PC inmate—with Inmate Austin—a violent inmate.

*Id.* at 7–9.  Plaintiff also alleges Officer Orunsolu failed to protect him by exposing plaintiff's PC

status to the other inmates in restrictive housing.  *Id.* at 9–10.  KDOC Defendants respond that

Officers Orunsolu, Martin, and Knapp deserve qualified immunity because plaintiff "has not

shown any law that puts Defendants Orunsolu, Martin, and Knapp on notice that double-celling

PC and OSR [(other security risk)] inmates together was a per se violation."  Doc. 72 at 11.

They also argue that Officer Orunsolu is entitled to qualified immunity because plaintiff failed to

clearly establish "offering an inmate a protective custody waiver at the inmate's cell to *avoid* protective custody (rather than *enter* protective custody) was a violation." *Id.* at 12.

Defendants are right.  Neither the Second Amended Complaint nor plaintiff's Response cite any authority clearly establishing Officers Orunsolu, Martin, and Knapp's alleged conduct was unlawful.  *See generally* Doc. 65; Doc. 89.  Plaintiff cites no cases showing that it was unlawful to cell PC inmates with OSR inmates.  And plaintiff cites no cases showing that it was unlawful for an officer to reveal plaintiff's PC status in the manner alleged.  Instead, plaintiff argues that "IMPP#20-108D (Exhibit R)"—a KDOC Internal Management Policy and Procedure (IMPP) document plaintiff attached as an exhibit to his Response to the *Martinez* Report— "clearly stat[es] that protective inmates were not to be housed with OSR . . . inmate[s,] but separated."  Doc. 89 at 3 (capitalization omitted) (citing Doc. 34-4).  But the KDOC's IMPP isn't the type of authority plaintiff must cite to show defendants violated clearly established law.  *See Williams v. Miller*, 696 F. App'x 862, 870 (10th Cir. 2017) ("[D]efendant's mere violation of a prison regulation does not equate to a constitutional violation[.]" (citing *Hostetler v. Green*, 323 F. App'x 653, 657–58 (10th Cir. 2009))).  Plaintiff must identify "an on-point Supreme Court or published Tenth Circuit decision that establishes the unlawfulness of the defendant's conduct; alternatively, the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  *Cummings*, 913 F.3d at 1239 (quotation cleaned up).  Plaintiff cites no Supreme Court, Tenth Circuit, or overwhelming out-of-circuit precedent to establish that Officers Orunsolu, Martin, and Knapp's conduct violated the law.

The court thus grants Officers Orunsolu, Martin, and Knapp qualified immunity on the individual capacity claims in Count I because plaintiff identifies no authority to show defendants violated a clearly established right.

**b.      Count II**

Count II fails for the same reason.  In Count II, plaintiff argues that "[d]efendant[s] were deliberately indifferent to his need for safety and violated his Eighth Amendment Right."  Doc. 65 at 11.  Plaintiff alleges Officers Flores and Latham failed to protect plaintiff from inmate assault by permitting Inmate Austin to bring his old mattress, concealing the contraband lock, to the new cell.  *Id.* at 11–12.  Plaintiff also alleges Officer Perez failed to protect him from inmate assault because Officer Perez knew Inmate Austin would attack plaintiff and delayed intervening, thus permitting Inmate Austin to continue attacking plaintiff.  *Id.* at 12–13.  KDOC Defendants respond that plaintiff failed to clearly establish "moving a mattress to a new cell violates the Constitution."  Doc. 72 at 12.  KDOC Defendants note that plaintiff merely cites a KDOC IMPP to support his argument, but never identifies any clearly established law.  *Id.*

Indeed, neither the Second Amended Complaint nor plaintiff's Response cite authority clearly establishing Officers Flores, Latham, and Perez's conduct was unlawful.  *See generally* Doc. 65; Doc. 89.  Plaintiff cites no cases showing that it's illegal for officers to bring an inmate's mattress from one cell to another or to wait before intervening in an inmate assault in circumstances like the ones presented here.  Instead, plaintiff argues "it was well know[n] and established that [guards] were not to provide inmates with extra mattresses," and that "IMPP# 12-129D"—a KDOC IMPP document plaintiff attached as an exhibit to his Response to the *Martinez* Report—"states residents are to be issued one mattress."  Doc. 89 at 2–3 (citing Doc. 34-9).  But, as the court discussed in its analysis of Count I, the KDOC IMPP isn't the type of authority sufficient to place the "constitutional question beyond debate."  *al-Kidd*, 563 U.S. at 741.

The court thus grants Officers Flores, Latham, and Perez qualified immunity on the individual capacity claims in Count II because plaintiff identifies no authority to show defendants violated a clearly established right.

### c.      Count III

Count III shares the same fate.  In Count III, plaintiff argues "[d]efendants were deliberately indifferent to plaintiff's serious medical needs" because they "failed to conduct an adequate examination of plaintiff's serious injuries and symptoms" and "failed to provide plaintiff pain medication prescribed by [the] doctor."  Doc. 65 at 14 (2nd Am. Compl.).  Plaintiff alleges Officers Freeman and Gannon were deliberately indifferent to his serious medical needs when they removed plaintiff prematurely from the offsite hospital with an IV needle still in his arm.  *Id.* at 14–16.  KDOC Defendants and Officer Gannon respond that "it was not clearly established that removing an inmate from a hospital earlier than the hospital staff would prefer or leaving an IV in [place] violates the Constitution."  Doc. 72 at 14; Doc. 77 at 7.

Plaintiff again cites no caselaw.  Neither the Second Amended Complaint nor plaintiff's Response to defendants' motions cite authority clearly establishing Officers Freeman and Gannon's conduct was unlawful.  *See generally* Doc. 65; Doc. 89.  Plaintiff cites no cases showing that it's illegal for officers to remove an inmate from the hospital prematurely or leave an IV needle in the inmate's arm when he's returned to his designated place of confinement.  To overcome qualified immunity, plaintiff must cite "settled law . . . dictated by controlling authority or a robust consensus of cases of persuasive authority[.]"  *Wesby*, 583 U.S. at 63.  Plaintiff doesn't even try to meet that standard for Count III.

The court thus grants Officers Freeman and Gannon qualified immunity on the individual capacity claims in Count III because plaintiff has failed to shoulder his burden to identify authority showing defendants violated a clearly established right.

In sum, plaintiff hasn't carried his burden to identify "an on-point Supreme Court or published Tenth Circuit decision that establishes the unlawfulness of the defendant's conduct[.]" *Cummings*, 913 F.3d at 1239 (quotation cleaned up).  He has failed to cite clearly established law showing KDOC Defendants or Officer Gannon's conduct violated the Eighth Amendment.  So, KDOC Defendants and Officer Gannon deserve qualified immunity on plaintiff's § 1983 claims for failure to protect and deliberate indifference to serious medical needs claims violating plaintiff's Eighth Amendment rights (Counts I–III).  Because plaintiff has failed one prong of the qualified immunity analysis, the court's inquiry ends there.  *See al-Kidd*, 563 U.S. at 735 ("Courts should think carefully before expending scarce judicial resources to resolve difficult and novel questions of constitutional or statutory interpretation that will have no effect on the outcome of the case." (citation and internal quotation marks omitted)).  The court thus grants KDOC Defendants and Officer Gannon's Motions to Dismiss (Doc. 71; Doc. 76) and dismisses plaintiff's claims against them in their individual capacities.

## V.       Conclusion

This Memorandum and Order resolves all three pending Motions to Dismiss.  *First*, the court grants Dr. Harrod and Nurse Mislap's Motion to Dismiss (Doc. 82) because plaintiff failed to exhaust his administrative remedies.  The court also grants Dr. Harrod and Nurse Mislap's motion because plaintiff has exceeded the statute of limitations to sue Nurse Mislap.  *Second*, the court grants KDOC Defendants' Motion to Dismiss (Doc. 71).  It dismisses plaintiff's claims against KDOC Defendants in their official capacities based on Eleventh Amendment immunity.  And it dismisses plaintiff's claims against the KDOC Defendants in their individual capacities based on qualified immunity.  *Third*, the court grants Officer Gannon's Motion to Dismiss (Doc. 76).  It dismisses plaintiff's claims against Officer Gannon in his official capacity based on

Eleventh Amendment immunity.  And finally, the court grants Officer Gannon's request for qualified immunity on plaintiff's claims in his individual capacity.

The court dismisses plaintiff's claims without prejudice.  A district court has discretion to decide whether to dismiss with or without prejudice. *Brown v. Baeke*, 413 F.3d 1121, 1123–24 (10th Cir. 2005).  For the claims barred by sovereign immunity, the court lacks jurisdiction, so the court must dismiss those claims without prejudice.  And, for the rest of plaintiff's claims, defendants haven't asked the court to dismiss plaintiff's claims with prejudice.  The court also concludes dismissal with prejudice unfairly would prejudice a pro se plaintiff if he later retained counsel and wanted to amend his Complaint.  The court thus dismisses the claims referenced in this Memorandum and Order without prejudice.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants Dana Flores, Eric Freeman, Adam Knapp, Asbury Latham, Malty Martin, Oluwatosin Orunsolu, and Orlando Perez's Motion to Dismiss (Doc. 71) is granted.

**IT IS FURTHER ORDERED THAT** defendant Alexander Gannon's Motion to Dismiss (Doc. 76) is granted.

**IT IS FURTHER ORDERED THAT** defendants Gordon Harrod and Denise Mislap's Motion to Dismiss (Doc. 82) is granted.

**IT IS SO ORDERED.**

**Dated this 12th day of August, 2024, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**