IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**DAMIEN M. BATEAST,**

                **Plaintiff**,

v.

**OLUWATOSIN S. ORUNSOLU, et al.,**

                **Defendants**.

Case No. 22-3093-DDC-ADM

**MEMORANDUM AND ORDER**

The motion decided by this Order looks strangely familiar. That's because defendant Rochelle Grahem's Motion to Dismiss parrots—almost word-for-word—the court's earlier Memorandum and Order. *Compare* Doc. 92 at 9–14 (Mem. & Order), *with* Doc. 99 at 3–8 (Mem. in Support). Such an efficient approach makes sense here. The court already has decided the arguments Ms. Grahem's motion presents. And the court's earlier analysis applies to Ms. Grahem with equal force.

Ms. Grahem's dismissal motion argues that plaintiff Damien M. Bateast[1] failed to exhaust his administrative remedies before bringing this action. Doc. 99 at 3–8. Two of Ms. Grahem's fellow defendants—Dr. Gordon Harrod and Nurse Denise Mislap—asserted the same failure-to-exhaust argument in their Motion to Dismiss. Doc. 83 at 2–4. And the court

---

[1] Because Mr. Bateast appears pro se, the court construes his pleadings liberally and holds them "to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citation omitted). But the court can't assume the role of his advocate. *Id.*

dismissed plaintiff's claims against those two defendants on that failure-to-exhaust basis.[2]  Doc. 92 at 14.  Due to a docketing error, Ms. Grahem didn't receive service until after the court issued its earlier Order.  *See* Doc. 93; Doc. 97.  And so, now, Ms. Grahem asserts the same failure-to-exhaust argument.  And the court reaches the same conclusion:  dismissal is warranted.

To explain this conclusion, the court offers an abbreviated analysis, below.  For a more thorough treatment, see the court's earlier Order.  Doc. 92; *Bateast v. Orunsolu*, No. 22-3093-DDC-ADM, 2024 WL 3756261, at *4–8 (D. Kan. Aug. 12, 2024).  The court draws the following background facts from the Second Amended Complaint (Doc. 65).  The court accepts plaintiff's "well-pleaded facts as true, view[s] them in the light most favorable to [him], and draw[s] all reasonable inferences from the facts" in his favor.  *Brooks v. Mentor Worldwide, LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021).  The recited facts focus narrowly on Ms. Grahem's role as the relevant defendant here.

**I.     Background**

In his Second Amended Complaint, Mr. Bateast invokes 42 U.S.C. § 1983.  Doc. 65 at 2.  He alleges that defendants—nine Kansas Department of Corrections (KDOC) officers and three medical personnel—violated his Eighth Amendment rights while acting under color of state law.  *Id.* at 3–4.  Specifically, he alleges that prison officials and medical staff were deliberately indifferent to his need for safety and proper medical care.  *Id.* at 2.

Mr. Bateast was "unprovokingly attacked by a cellmate" on June 26, 2020, while incarcerated at El Dorado Correctional Facility (EDCF).  *Id.* at 2, 14.  He sustained serious injuries as a result.  *Id.* at 2.  So, two officers escorted him to EDCF's medical clinic.  *Id.* at 14.

---

[2]     The court's earlier Order also analyzed Nurse Mislap's statute of limitations arguments.  *See* Doc. 92 at 14–17.  In so doing, though, the court acknowledged that its analysis could have ended with administrative exhaustion.  *Id.* at 14.  That is, the exhaustion arguments—by themselves—sufficed to dismiss the claims.  *Id.*

Ms. Grahem worked as a nurse at EDCF. *Id.* at 4. She examined Mr. Bateast in that capacity after the June 26 incident. *Id.* at 14. At the examination, Ms. Grahem cleaned Mr. Bateast's bleeding elbow but neglected to ask about his other injuries. *Id.* In addition to his elbow wound, Mr. Bateast had a "tennis ball size knot on [his] forehead and [a] swollen closed black eye" which "should have warranted questions." *Id.* He also experienced such extreme dizziness that two guards had to hold him upright on the exam table. *Id.* He contends Ms. Grahem—as a nurse—should have known that these signs manifested a risk of concussion and should have evaluated him accordingly. *Id.* Instead, Mr. Bateast remained confined in an isolated suicide-watch cell in the infirmary. *Id.* The cell didn't have an emergency call button. *Id.* The next day at the hospital, x-rays revealed plaintiff had suffered severe head trauma and a fractured eye socket. *Id.* at 15.

Ms. Grahem seeks dismissal under Fed. R. Civ. P. 12(b)(6). Doc. 98 at 1. She argues that plaintiff failed to exhaust his administrative remedies—as required under the Prison Litigation Reform Act (PLRA)—before filing suit. Doc. 99 at 2 (citing 42 U.S.C. § 1997e(a)). The court next recites—verbatim from its earlier Order—the governing law.

## II.   Legal Standard

The PLRA requires inmates to exhaust all available prison administrative remedies before filing a complaint in federal court. Section 1997e(a) expressly provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (stating that under PLRA "a prisoner must exhaust his administrative remedies prior to filing a lawsuit regarding prison conditions in federal court"). This exhaustion requirement "is mandatory, and the district court [is] not authorized to

dispense with it." *Beaudry v. Corr. Corp. of Am.*, 331 F.3d 1164, 1167 n.5 (10th Cir. 2003), *cert. denied*, 540 U.S. 1118 (2004). A prison or prison system's regulations define the steps a prisoner must follow to exhaust administrative remedies properly and a prisoner "may only exhaust by properly following all of the steps laid out" in those regulations. *Little*, 607 F.3d at 1249 (citing *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). In suits governed by the PLRA, failure to exhaust is an affirmative defense and the defendant bears the burden of proof. *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007).

For Kansas state prisoners, the administrative regulations first require the prisoner seek an informal resolution with personnel who work with the inmate directly or daily. Kan. Admin. Regs. § 44-15-101(b). "That attempt shall be documented." *Id.* If the informal resolution is unsuccessful, the inmate then must progress through a three-level grievance process that includes submitting a grievance report form to (1) the appropriate unit team member, (2) the warden of the facility, and (3) the office of the secretary of corrections. *Id.* § 44-15-101(d). At step one, if the unit team fails to respond within 10 calendar days, the inmate may send a grievance report to the warden without the unit team's signatures. *Id.* § 44-15-102(a)(2). The grievance report must "include an explanation of the absence of the . . . signatures." *Id.* At step two, if the warden fails to respond within 10 calendar days, the inmate may send the grievance to "the secretary of corrections with an explanation of the reason for the delay . . . within three calendar days of the deadline for [the warden's] decision[.]" *Id.* § 44-15-102(b)(3)(A)(ii), (b)(3)(G), (c)(1). At step three, if the secretary receives a grievance "without prior action by the warden," the secretary may return the form to the warden or, if the warden failed to timely respond, the secretary may accept the form. *Id.* § 44-15-102(c)(4). The secretary has "20 working days from receipt to return the grievance report form to the inmate with an answer." *Id.* § 44-15-102(c)(3). And,

when KDOC responds "to parts of grievances that are procedurally or substantively appropriate," it doesn't waive "defects with the remaining parts of the grievance that are not procedurally or substantively appropriate." *Id.* § 44-15-102(d)(2).

### III.     Analysis

The court already concluded that Mr. Bateast failed to comply with the above-outlined grievance process in three ways. Doc. 92 at 11. *First*, Mr. Bateast failed to employ the requisite informal dispute resolution procedures. *Id.*; *see also* Kan. Admin. Regs. § 44-15-101(b). The evidence Mr. Bateast cited to establish informal resolution was an "Inmate Request to Staff Member" form. Doc. 92 at 11 (first citing Doc. 89 at 4–5; then citing Doc. 22-1 at 8–9 (Ex. B)). But Mr. Bateast filed that form months before the alleged physical attack undergirding this suit. *Id.* Mr. Bateast's cited evidence thus doesn't suffice to demonstrate he complied with the informal dispute resolutions procedures. *Id. Second*, Mr. Bateast exceeded the time limit for filing his grievance with the secretary after receiving no response from the warden. *Id.* at 12. The uncontested exhibits from the *Martinez* report demonstrate that the secretary received Mr. Bateast's grievance 35 days after Mr. Bateast had submitted his grievance to the warden—more than double the 13-day window. *Id.* (first citing Doc. 22-1 at 6–7 (Ex. B); then citing *Lindsey v. Cook*, 19-CV-03094-HLT, 2021 WL 483855, at *3 (D. Kan. Feb. 4, 2021) (holding plaintiff "[b]y his own admission, . . . did not comply with the timeline and he provide[d] no authority excusing this noncompliance" when he "sent a grievance to the warden and waited 20 days before sending a grievance to the secretary of corrections")); *see also* Kan. Admin. Regs. §§ 44-15-102(b)(3)(A)(ii), (b)(3)(G), (c)(1). And, *third*, Mr. Bateast failed to remedy defects in his grievance. Doc. 92 at 13. A Corrections Manager informed Mr. Bateast that his grievance was defective, but Mr. Bateast never cured those procedural defects. *Id.* (first citing Doc. 22-1 at 5 (Ex. B); then citing *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) ("An inmate who

begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies.")).

There's nothing to displace the court's earlier administrative-exhaustion conclusions. Mr. Bateast never responded to Ms. Grahem's Motion to Dismiss (Doc. 98). And his earlier attempt to rebut Dr. Harrod and Ms. Mislap's failure-to-exhaust arguments was unavailing. Doc. 89 at 4–5 (Mr. Bateast's Response addressing failure to exhaust); Doc. 92 at 11–14 (court's Order identifying shortcomings of Mr. Bateast's exhaustion evidence and arguments). Nor can Mr. Bateast have cured his failure-to-exhaust deficiencies in the interim—not without a time machine. By reiterating these three shortcomings, Ms. Grahem has shouldered her burden to show Mr. Bateast failed to exhaust his administrative remedies. The court's unaltered exhaustion conclusions abide just one result: dismissal. *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009) (explaining that district court properly dismissed plaintiff's claims when plaintiff "failed to exhaust his administrative remedies"). The court grants Ms. Grahem's Motion to Dismiss (Doc. 98) and dismisses Mr. Bateast's claims against her without prejudice. *David v. Crow*, No. CIV-21-534-SLP, 2024 WL 3488232, at *6 n.10 (W.D. Okla. July 19, 2024) ("Dismissal for failure to exhaust administrative remedies under the PLRA is ordinarily without prejudice." (citing *Gallagher*, 587 F.3d at 1068)).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Rochelle Grahem's Motion to Dismiss (Doc. 98) is granted. The court directs the Clerk of the Court to terminate Ms. Grahem as a defendant in this action.

**IT IS SO ORDERED.**

**Dated this 19th day of August, 2025, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
